**James Rodney FEILD, Plaintiff,**

v.

**Carmelo GRAFFAGNINO, Duke University, and Duke University Health Systems, Inc., Defendants.**

**No. 06–2505–JPM–tmp.**

United States District Court,
W.D. Tennessee,
Western Division.

Sept. 11, 2007.

Paul Forrest Craig, Law Office of Paul Forrest Craig, Memphis, TN, for Plaintiff.

Larry H. Montgomery, Glankler Brown, PLLC, David M. Dunlap, Farris Mathews Branan Bobango Hellen & Dunlap, PLC, Memphis, TN, Caroline Marie Mew, John M. Simpson, Fulbright & Jaworski LLP, Washington, DC, for Defendants.

## ORDER GRANTING DEFENDANTS DUKE UNIVERSITY'S AND DUKE UNIVERSITY HEALTH SYSTEM, INC.'S MOTION TO DISMISS OR TRANSFER

JON P. McCALLA, District Judge.

Before the Court is Defendants Duke University's and Duke University Health System, Inc.'s ("Defendants") Motion to Dismiss (DE # 13), filed on October 4, 2006.[1] Plaintiff James Rodney Feild ("Plaintiff") filed his Memorandum of Law

---

1. Defendant Carmelo Graffagnino has filed a separate Motion to Dismiss (DE # 12), which has been addressed in a previous Order (DE # 36). Only the Motion to Dismiss of Defendants Duke University and Duke University Health System, Inc. is addressed in the instant Order.

and Facts in Opposition to Defendants' Motion to Dismiss or Transfer (DE # 21) on December 4, 2006. Defendants filed their Reply to Plaintiff's Memorandum of Law and Facts in Opposition to Defendants' Motion to Dismiss or Transfer (DE # 31) on December 22, 2006.

For the following reasons, Defendants' Motion to Dismiss is GRANTED. All of Plaintiff's claims against Defendants are DISMISSED. Defendants' Motion to Transfer is DENIED as moot.

## I. BACKGROUND AND RELEVANT FACTS

In June, 1997, Plaintiff treated Ms. Helen Chapman Samples ("Samples") for an intra-cerebral aneurysm and complications surrounding the aneurysm. (Compl.¶ 1.) Ms. Samples died as a result of her medical condition on June 17, 1997. (Compl.¶ 2.)

On September 21, 1999, an action was filed against, *inter alia*, Plaintiff, alleging medical malpractice on the part of Plaintiff and others related to Samples' death. The basis of that lawsuit ("Samples Litigation") was an affidavit by Dr. Carmelo Graffagnino ("Graffagnino") which stated that the physicians treating Samples had deviated from the standard of care. (Compl.¶ 5.) At all times relevant to the instant motion, Graffagnino was employed as a professor by Defendants. (Compl.¶¶ 8–10.)

On September 8, 2004, Graffagnino was deposed for the Samples Litigation. (Compl.¶ 7.) During this deposition, Graffagnino "admitted that Dr. Feild did not deviate from the standard of care in his treatment of Mrs. Samples." (Compl.¶ 13.) Plaintiff was granted summary judgment in the Samples Litigation in January, 2005. (Compl.¶ 14.)

On January 13, 2006, Plaintiff filed a *pro se* complaint in the Circuit Court of Tennessee, Shelby County, against, *inter alia*, Graffagnino and Defendants, which Plain-

tiff later voluntarily dismissed. Plaintiff filed the present suit against Defendants and co-defendant, Graffagnino, on August 3, 2006. (Compl.¶ 15.)

## II. STANDARDS OF REVIEW

### A. RULE 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) permits dismissal of a claim for lack of jurisdiction over the person. The plaintiff bears the burden of establishing jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.1991). Absent an evidentiary hearing on the issue of personal jurisdiction, the plaintiff "need only make a prima facie showing of jurisdiction." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir.2002)(*quoting Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir.2002)). A *prima facie* showing of jurisdiction may be established based upon the plaintiff's presentation of specific facts, by affidavit or otherwise. *Theunissen*, 935 F.2d at 1458. Where a court does not conduct an evidentiary hearing, the pleadings, depositions, and affidavits are considered in the light most favorable to the plaintiff. *Williams v. FirstPlus Home Loan Trust 1996–2*, 209 F.R.D. 404, 410 (W.D.Tenn.2002). In its determination of a 12(b)(2) motion, the Court "does not weigh the controverting assertions of the party seeking dismissal." *Theunissen*, 935 F.2d. at 1459.

Presented with a properly supported 12(b)(2) motion to dismiss, the court has three procedural alternatives: "it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Id.* at 1458.

In considering a motion to dismiss, "the court must construe the complaint in a light most favorable to the plaintiff, and accept all of [the] factual allegations as true." *Bird*, 289 F.3d at 871. This re-

quirement, however, does not require the court "to ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiffs." *Kerry Steel, Inc. v. Paragon Indus., Inc.,* 106 F.3d 147, 153 (6th Cir. 1997). "Dismissal in this procedural posture is proper only if *all* the specific facts which the plaintiff ... alleges collectively fail to state a *prima facie* case for jurisdiction." *Id.* at 149 (*quoting Theunissen,* 935 F.2d at 1458).

## B. RULE 12(b)(6) MOTION

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss the plaintiff's complaint "for failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, a court must treat all of the well-pleaded allegations of the complaint as true. *See Saylor v. Parker Seal Co.,* 975 F.2d 252, 254 (6th Cir.1992). Furthermore, the court must construe all of the allegations in the light most favorable to the non-moving party. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "A court may dismiss a complaint [under Rule 12(b)(6) ] only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

## III. ANALYSIS

### A. RULE 12(b)(2) PERSONAL JURISDICTION

Defendants move to dismiss Plaintiff's Complaint for lack of personal jurisdiction

pursuant to Rule 12(b)(2). A federal court has personal jurisdiction over a defendant if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process. *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 954 F.2d 1174, 1176 (6th Cir.1992). In Tennessee, the long-arm statute extends the personal jurisdiction of Tennessee courts to the full limit allowed by due process under the United States Constitution. *Bridgeport Music, Inc. v. Still N The Water Publ'g,* 327 F.3d 472, 477 (6th Cir.2003); *Kelly v. Int'l Capital Resources, Inc.,* 231 F.R.D. 502, 509 (M.D.Tenn.2005); *Masada Inv. Corp. v. Allen,* 697 S.W.2d 332, 334 (Tenn.1985).[2]

Next, the Court must determine whether the assertion of personal jurisdiction over the Defendants would violate the Due Process Clause. *Bridgeport Music, Inc. v. Still N The Water Publ'g,* 327 F.3d 472, 477 (6th Cir.2003). Consistent with the Due Process Clause, courts can "exercise personal jurisdiction over a defendant so long as that defendant has 'certain minimum contacts' with the forum such that the exercise of personal jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Cupp v. Alberto–Culver USA, Inc.,* 308 F.Supp.2d 873, 877 (W.D.Tenn.2004) (*quoting Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

Personal jurisdiction may be either general or specific. General jurisdiction arises from the Defendant's contacts with the forum state. "Unlike the specific jurisdiction analysis, which focuses on the

---

2. Tenn.Code Ann. § 20–2–214 was amended in 1972 to add subsection (6), which grants jurisdiction to Tennessee courts on "any basis not inconsistent with the constitution of this state or of the United States." Tenn.Code Ann. § 20–2–214(a)(6); *Masada,* 697 S.W.2d at 334 ("Subsection (6) changed the long-arm statute from a 'single act' statute to a 'minimum contacts' statute which expanded the jurisdiction of Tennessee courts to the full limit allowed by due process.").

cause of action, the defendant and the forum, a general jurisdiction inquiry is dispute blind...." *Dickson Marine Inc. v. Panalpina,* 179 F.3d 331, 339 (5th Cir. 1999) (*citing Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). A defendant may be subject to general jurisdiction only when it "has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant." *Kerry Steel,* 106 F.3d at 149 · *citing Helicopteros,* 466 U.S. at 414–15 & nn. 8–10, 104 S.Ct. 1868; *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.,* 882 F.2d 1087, 1089 (6th Cir.1989), *cert. denied,* 493 U.S. 1058, 110 S.Ct. 870, 107 L.Ed.2d 953 (1990). "General jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Bird,* 289 F.3d at 873 (*citing WEDGE,* 882 F.2d at 1089).

■ Specific jurisdiction, on the other hand, arises from contacts that are related to the cause of action. With respect to specific jurisdiction, the Sixth Circuit employs a three-part test to determine whether a court can exercise jurisdiction over a defendant. First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequence caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Calphalon Corp. v. Rowlette,* 228 F.3d 718, 721 (6th Cir.2000) (*quoting Southern*

*Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir.1968)).

### 1. General Personal Jurisdiction

The Court first determines whether it can exercise general jurisdiction over the Defendants. The Supreme Court, in *Helicopteros,* determined that the defendant, a Colombian corporation, did not maintain sufficient contacts with Texas to allow a Texas state court to exercise general jurisdiction over the Defendant. *Helicopteros,* 466 U.S. at 418–19, 104 S.Ct. 1868. In that case, the corporation's contacts with Texas included the following: negotiating a contract in Texas; accepting checks drawn on a Texas bank; purchasing close to 80% of its fleet of helicopters as well as other spare parts and accessories in Texas; and sending pilots to Texas for training. *Id.* at 411, 416, 104 S.Ct. 1868.

Here, the Court finds that the collective group of contacts that Plaintiff alleges Defendants have with the State of Tennessee are not so continuous and systematic as to create general personal jurisdiction over Defendant as discussed *infra.* Additionally, it is undisputed that the Defendants do not maintain a place of business, bank account, or local offices in Tennessee.

### 2. Specific Personal Jurisdiction

■ The Court next considers whether specific personal jurisdiction exists over the Defendants. The first prong of the three-part *Mohasco* test requires that the Court determine whether Defendants have purposefully availed themselves of the privilege of acting in Tennessee or causing a consequence in the state. *Mohasco,* 401 F.2d at 381. "The 'purposeful availment' requirement is satisfied when the defendant's contacts with the forum state proximately result from actions by the defendant that create a substantial connection with the forum State, and when the defendant's conduct and connection with the forum are such that he should reasonably

anticipate being haled into court there." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir.1996). The physical presence of a defendant or its agents is not required for a court to find that a defendant transacted business within a state. *Mohasco*, 401 F.2d at 382 (noting that soliciting business by mail, transmission of radio broadcasts, and sending items into the state to be sold by independent contractors constitute the transaction of business in the state).

A principal may be subjected to personal jurisdiction through the acts of its agent when the agent acts on behalf of its principal in a jurisdiction such that the principal has purposefully availed itself of the privilege of acting in Tennessee or causing a consequence in the state. *Kelly*, 231 F.R.D. at 511. The plaintiff bears the burden of proving by a preponderance of the evidence that the agent is acting within the scope of its agency to expose its principal to personal jurisdiction, and the plaintiff may prove such action by affidavit and in other pleadings. *Id.* (finding that personal jurisdiction in a Tennessee court was proper when plaintiff proved by affidavit that the defendant's agent acted on behalf of the defendant in Tennessee).

"In determining whether an agency relationship exists, the principal's right to control the actions of an agent is an important factor, but that right of control is not necessarily as important as the principal's actual exercise of control over the agent." *Williams v. Firstplus Home Loan Owner Trust 1998-4*, 310 F.Supp.2d. 981, 994 (W.D.Tenn.2004) *citing White v. Revco Disc. Drug Ctrs., Inc.*, 33 S.W.3d 713, 723 (Tenn.2000). "It is Plaintiffs' burden, not Defendants', to make a prima facie showing of personal jurisdiction," and unsupported allegations of an agency relationship, which purportedly exposes a defendant to personal jurisdiction, may not survive a motion to dismiss. *Id.* at 996.

As noted above, it is undisputed that Defendants do not maintain a place of business, bank account, or local offices in Tennessee. Additionally, the Court finds that Defendants have not purposefully availed themselves of the privilege of acting in Tennessee or causing a consequence in the state. Plaintiff alleges that Graffagnino was acting as the agent of Defendants when he gave his affidavit in the Samples Litigation. (Compl.¶¶ 10–11.) However, in their Motion to Dismiss or Transfer, Defendants have provided the affidavits of Graffagnino (DE # 13–4), Dr. Harvey Jay Cohen (DE # 13–5), and Alene Mercer (DE # 13–3), which make it clear that, while Graffagnino is a professor at Duke University, Graffagnino was not acting as the agent of Defendants when he gave his affidavit in the Samples Litigation.

Plaintiff incorrectly argues that Graffagnino's employment relationship with Defendants alone makes Graffagnino the agent of Defendants for purposes of providing expert testimony in the Samples Litigation. (Pl. Resp. Mot. Dismiss, DE # 22.) This argument is without basis in law or fact. Plaintiff has provided no evidence by way of affidavit or otherwise to rebut Defendants' 12(b)(2) motion and to establish that Graffagnino was acting as agent for Defendants while giving expert testimony in the Samples Litigation.

The Court finds that Defendants have not purposely availed themselves of the privilege of doing business in Tennessee and should not have reasonably anticipated jurisdiction here. As a result, the Court finds that Plaintiff has failed to satisfy the *Mohasco* test. The Plaintiff cannot make out a prima facie showing of personal jurisdiction over the Defendants.

Accordingly, Defendants' Motion to Dismiss based on lack of personal jurisdiction is GRANTED. All of Plaintiff's claims against Defendants are DISMISSED.

## B. RULE 12(b)(6) FAILURE TO STATE A CLAIM

The Court need not consider Defendants' 12(b)(6) motion in order to dismiss Plaintiff's claims against Defendants. However, the Court still addresses the Defendants' 12(b)(6) motion as follows.

Defendants' 12(b)(6) Motion to Dismiss alleges that Plaintiff's claims of Negligence, Medical Malpractice, and Intentional Infliction of Emotional Distress, arising from Defendants' affidavit in the Samples Litigation, are time-barred by the applicable statutes of limitations and by the statute of repose for medical malpractice actions. Additionally, Defendants contend that Plaintiff's three claims should be dismissed because of testimonial immunity and for Plaintiff's alleged failure to aver facts supporting the essential elements of the claims. (Def. Mot. Dismiss, DE # 12.)

Because the Court's subject matter jurisdiction here is based on diversity jurisdiction under 28 U.S.C. § 1332, the Court will address the alleged grounds for dismissal according to Tennessee substantive law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

### 1. Statutes of Limitations

Defendants argue that Plaintiff's negligence and intentional infliction of emotional distress claims are barred by Tenn.Code Ann. § 28–3–104 and that Plaintiff's medical malpractice claim is barred by Tenn. Code Ann. § 29–26–116. The Court agrees with the Defendants and finds that all three of Plaintiff's claims are time-barred and should be dismissed.

### a. Negligence and Intentional Infliction of Emotional Distress

The applicable Tennessee statute of limitations for personal tort actions is one year. Tenn.Code Ann. § 28–3–104(a)(1)("The following actions shall be commenced within one (1) year after the cause of action accrued: (1) Actions ... for injuries to the person ..."); *see also Harvey v. Martin*, 714 F.2d 650, 652 (6th Cir.1983)(holding that plaintiff's claim for intentional infliction of emotional distress was governed by one year statute of limitations prescribed by § 28–3–104).

Subject to a few exceptions, a cause of action for an injury accrues when the injury occurs. *Cherry v. Williams*, 36 S.W.3d 78, 83 (Tenn.Ct.App.2000). The "discovery rule" exception is routinely applied to determine when a cause of action accrues under Tenn.Code Ann. § 28–3–104. *Leach v. Taylor*, 124 S.W.3d 87, 91 (Tenn.2004); *see also Wyatt v. A–Best Co., Inc.*, 910 S.W.2d 851, 854 (Tenn.1995)(holding that the statute of limitations is tolled "only during the period when the plaintiff had no knowledge at all that the wrong had occurred and, as a reasonable person, was not put on inquiry").

The discovery rule is applicable in tort actions such that "the cause of action accrues and the statute of limitations commences to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered." *Abels ex rel. Hunt v. Genie Industries, Inc.*, 202 S.W.3d 99, 106 (Tenn.2006)(*quoting McCroskey v. Bryant Air Cond. Co.*, 524 S.W.2d 487, 491 (Tenn. 1975)). "A cause of action in tort does not accrue until a judicial remedy[3] is avail-

---

**3.** A judicial remedy is available when (1) a breach of a legally recognized duty owed to plaintiff by defendant (2) causes plaintiff legally cognizable damage. A breach of a legally cognizable duty occurs when plaintiff discovers or "reasonably should have discov-

ered, (1) the occasion, the manner and means by which a breach of duty occurred that produced ... injury; and (2) the identity of the defendant who breached the duty." Legally cognizable damages occur when plaintiff dis-

able," but "a plaintiff is not entitled to delay filing until all injurious effects or consequences of the actionable wrong are actually known." *Wyatt*, 910 S.W.2d at 855. *See also Doe v. Coffee County Bd. of Ed.*, 852 S.W.2d 899, 904 (Tenn.Ct.App.1992)("Discovery is not postponed until the plaintiff becomes fully aware of all the injurious effects of the defendant's conduct.").

Here, Plaintiff knew or had reason to know of Graffagnino's allegedly actionable statements no later than September 21, 1999, because Graffagnino's affidavit was the basis for the Samples Litigation. (Compl.¶ 5.) The Court has already determined that Graffagnino was not acting as the agent of Defendants when he gave his affidavit in the Samples Litigation. However, even if the Court had determined an agency relationship, Plaintiff should have brought his claims for negligence and intentional infliction of emotional distress against the Defendants no later than September 21, 2000. Even if Plaintiff failed to learn of Graffagnino's allegedly actionable statements until Graffagnino's deposition on September 8, 2004 (Compl.¶ 6.), Plaintiff should have brought his claims for negligence and intentional infliction of emotional distress no later than September 8, 2005.

Plaintiff's contention that the statute of limitations began running in January, 2005, when summary judgment was granted for Plaintiff in the Samples Litigation, is simply incorrect under Tennessee's discovery rule. Plaintiff knew or should have known of Graffagnino's allegedly actionable statements no later than September 21, 1999, and a judicial remedy was avail-

able to Plaintiff at that time. Plaintiff's *pro se* complaint, filed on January 13, 2006, was untimely as is his present complaint before this Court.[4]

Accordingly, had the Court not dismissed Plaintiff's claims for lack of personal jurisdiction, Plaintiff's claims for negligence and intentional infliction of emotional distress would be dismissed because they are time-barred.

### b. Medical Malpractice

■ The applicable Tennessee statute of limitations for medical malpractice actions is one year. Tenn.Code Ann. § 29–26–116(a)(1). Additionally, the discovery rule with regard to medical malpractice claims is codified at Tenn.Code Ann. § 29–26–116(a)(2). Under the discovery rule in medical malpractice actions, as in negligence or intentional infliction of emotional distress claims, the one-year statute of limitations begins to run "when the patient discovers, or reasonably should have discovered (1) the occasion, the manner, and the means by which the breach of duty that caused his or her injuries occurred, and (2) the identity of the person who caused the injury." *Burk v. RHA/Sullivan, Inc.*, 220 S.W.3d 896, 900 (Tenn.Ct.App.2006) (citations omitted). A plaintiff "is not entitled to wait until he or she knows all of the injurious consequences caused by the alleged negligence before filing suit." *Id. (quoting Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998)). Instead, the statute of limitations in a medical malpractice action "is tolled only during that period of time when the plaintiff has neither actual nor construc-

---

covers "facts which would support an action for tort against the tortfeasor." *Wyatt*, 910 S.W.2d at 855.

4. The Tennessee savings statutes under Tenn. Code Ann. § 28–1–105 and Tenn.Code Ann. § 28–1–114 may have protected Plaintiff's

claims from the statute of limitations in this Court if his claims had been timely filed in state court. However, Plaintiff's state court claims were untimely, as discussed above, so the savings statutes are inapplicable to the analysis here.

tive knowledge of (1) the injury, (2) the wrongful conduct causing that injury, and (3) the identity of the party or parties who engaged in that wrongful conduct." *Id.* (citations omitted).

■ There is also a statute of repose for medical malpractice actions, which requires plaintiffs to bring a medical malpractice action within three years of the date of the wrongful conduct, unless the defendant fraudulently concealed the wrongful conduct. Tenn.Code Ann. § 29–26–116(a)(3). The statute of repose "is unrelated to the accrual of the cause of action, commencing not on discovery like the statute of limitations, but on the date of the alleged wrongful conduct." *Shadrick v. Coker,* 963 S.W.2d 726, 735 (Tenn. 1998). Application of the statute of repose "is entirely unrelated to the accrual of a cause of action and can, in fact, bar a cause of action before it has accrued." *Constant v. Wyeth,* 352 F.Supp.2d 847, 852 (M.D.Tenn.2003) (*quoting Cronin v. Howe,* 906 S.W.2d 910, 913 (Tenn.1995)).

Here, Plaintiff knew or should have known of Graffagnino's allegedly actionable statements no later than September 21, 1999, because Graffagnino's affidavit was the basis for the Samples Litigation. (Compl.¶ 5.) The Court has already determined that Graffagnino was not acting as the agent of Defendants when he gave his affidavit in the Samples Litigation. However, even if the Court had determined an agency relationship, Plaintiff should have brought his medical malpractice claim against Defendants no later than September 21, 2000, to avoid the statute of limitations. Even if Plaintiff failed to learn of Graffagnino's allegedly actionable statements until Graffagnino's deposition on September 8, 2004 (Compl.¶ 6.), Plaintiff should have brought his medical malpractice claim no later than September 8, 2005.

Plaintiff's contention that the statute of limitations began running in January,

2005, when summary judgment was granted for Plaintiff in the Samples Litigation, is simply incorrect under Tennessee's discovery rule. Plaintiff knew or should have known of Graffagnino's allegedly actionable statements no later than September 21, 1999, and a judicial remedy was available to Plaintiff at that time. Plaintiff's *pro se* complaint, filed on January 13, 2006, was untimely as is his present complaint before this Court.

Even if Plaintiff's statute of limitations argument was correct, his claim is extinguished by the statute of repose. Because Plaintiff does not claim that Defendants fraudulently concealed Graffagnino's affidavit in the Samples Litigation, the statute of repose began running no later than September 21, 1999. As a result, Plaintiff's claim was extinguished by the statute of repose on September 21, 2002.

Accordingly, had the Court not dismissed Plaintiff's claims for lack of personal jurisdiction, Plaintiff's claim for medical malpractice would be dismissed because it is time-barred.

### 2. Testimonial Immunity

■ While it is not necessary for the Court to consider the issue of testimonial immunity in order to grant Defendants' Motion to Dismiss, it appears that testimonial immunity shields the Defendants from liability. "Tennessee law recognizes the testimonial immunity, which gives a witness who testifies in a judicial proceeding immunity from damages sought in a later civil suit based on his allegedly false testimony." *Brown v. Birman Managed Care, Inc.,* 42 S.W.3d 62, 72 (Tenn.2001); *Spurlock v. Satterfield,* 167 F.3d 995, 1001 (6th Cir.1999) ("It is well-settled that witnesses are granted immunity from suit for all testimony provided in judicial proceedings.").

Under Tennessee law, "a statement by a judge, witness, counsel, or party, to be absolutely privileged, must meet two conditions, viz: (1) it must be in the course of a judicial proceeding, and (2) it must be pertinent or relevant to the issue involved in said judicial proceeding." *Jones v. Trice*, 210 Tenn. 535, 360 S.W.2d 48, 52 (1962). The immunity attaches "even though such statements are false, known to be false, or even malicious." *Id.* at 50; *see also Cooley v. Galyon*, 109 Tenn. 1, 70 S.W. 607, 610 (1902) (holding that "the question is not whether the words spoken by the defendant were false and malicious, but were they spoken in a judicial proceeding, and were they relevant and pertinent to the subject of inquiry in that proceeding"); *Medlock v. Ferrari*, 602 S.W.2d 241, 245 (Tenn.Ct.App.1979) ("Witnesses in a lawsuit are entitled to absolute privilege for their testimony, even when that testimony is given maliciously and with knowledge of its falsity.")

Here, all three of Plaintiff's claims against the Defendants arise from allegedly actionable statements made in Graffagnino's affidavit, which was the basis for the Samples Litigation against Plaintiff. (Compl.¶ 5.) The Court has already determined that Graffagnino was not acting as the agent of Defendants when he gave his affidavit in the Samples Litigation. However, even if the Court had determined an agency relationship, "it is clear that Dr. Graffagnino's statements were made during the course of the judicial proceeding." (Pl. Resp. Mot. Dismiss, DE # 22.) Plaintiff's argument that Graffagnino's statements were not pertinent or relevant to the proceeding, based on their falsity, is clearly contrary to Tennessee law. The question is not whether the affidavit testimony was accurate but whether the testi-

mony was relevant to the proceeding. Because Graffagnino's affidavit was the basis of the Samples Litigation, the affidavit statements were obviously relevant to the proceedings.

Graffagnino's statements in his affidavit were made in the course of a judicial proceeding, and they were pertinent and relevant to that proceeding, whether or not they were false, negligent, or even malicious. (Compl.¶¶ 5–6.) As a result, Defendants are shielded from liability due to Graffagnino's affidavit statements, and Plaintiff's claims for negligence, medical malpractice, and intentional infliction of emotional distress must fail.

### 3. Essential Elements of Plaintiff's Claims

While it is not necessary for the Court to consider the issue of whether Plaintiff alleges sufficient facts to support the essential elements of Plaintiff's claims in order to grant Defendants' Motion to Dismiss, it appears that all of Plaintiff's claims lack at least one essential element.

#### a. Negligence

■ Under Tennessee law, a plaintiff must allege that the alleged tortfeasor owed a duty to the plaintiff, and such a duty is "an essential element in negligence cases." *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn.1993). Expert witnesses do not owe any duty to an adverse party; instead, they owe a duty to the Court to testify truthfully and honestly. *Kahn v. Burman*, 673 F.Supp. 210 (E.D.Mich.1987), *aff'd* 878 F.2d 1436 (6th Cir.1989); *see also Williams v. Nat'l Med. Serv., Inc.*, 400 F.3d 1102, 1104 (8th Cir.2005)(holding that expert witnesses owe no duty to adverse parties); *Lewis v. Swenson*, 126 Ariz. 561, 617 P.2d 69, 74 (1980) [5]("A witness' duty is

---

5. Opinion by Judge Sandra Day O'Connor before her elevation to the United States Supreme Court.

owed to the court, and not to the adverse party. The breach of the duty owed to the court would not give rise to a cause of action in tort by the adverse party against the [witness].").

Plaintiff argues that it is "the recent trend to hold medical expert witnesses accountable for tortuous acts conducted during judicial proceedings." (Pl. Resp. Mot. Dismiss, DE # 22.) The Plaintiff's argument fails, however, because each case cited by Plaintiff is an instance of a retaining party suing its own expert witness, a so-called "friendly" expert witness. (Pl. Resp. Mot. Dismiss, DE # 22.) Some courts have held that expert witnesses owe a duty to the party who has retained them. *See, e.g., Levine v. Wiss & Co.*, 97 N.J. 242, 478 A.2d 397 (1984); *Murphy v. Mathews*, 841 S.W.2d 671 (Mo.1992); *Dalton v. Miller*, 984 P.2d 666 (Colo.App.Ct.1999). However, this Court is unable to find a single instance of any court holding that an adverse expert witness owes any duty to an adverse party.

The Court has already determined that Graffagnino was not acting as the agent of Defendants when he gave his affidavit in the Samples Litigation. However, even if the Court had determined an agency relationship, Graffagnino was an adverse witness to Plaintiff; therefore, Defendants could owe no duty of care to Plaintiff when Graffagnino made the allegedly actionable statements in Graffagnino's affidavit during the Samples Litigation. (Compl.¶ 5.) As a result, Plaintiff's negligence claim should be dismissed.

### b. Medical Malpractice

■ Plaintiff also fails to make out a claim for medical malpractice because Plaintiff has not established a duty that Defendants or Graffagnino owed him, as discussed *supra*. More specifically, the "duty" element of a claim for medical malpractice requires a physician-patient rela-

tionship under Tennessee law. *Kelley v. Middle Tennessee Emergency Physicians, P.C.*, 133 S.W.3d 587, 592 (Tenn.2004)("A physician's duty of care arises from the physician-patient relationship."); *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 431 (Tenn. 1994)("The physician-patient relationship is an essential element of a cause of action for medical malpractice."). Because Plaintiff has failed to allege that he was ever the patient of Defendants or Graffagnino, Plaintiff's medical malpractice claim must fail.

### c. Intentional Infliction of Emotional Distress

■ To state a claim for intentional infliction of emotional distress under Tennessee law, "a plaintiff must establish that: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was so outrageous that it cannot be tolerated by civilized society; and (3) the defendant's conduct resulted in serious mental injury to the plaintiff." *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 51 (Tenn.2004); *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997).

The second element requires a plaintiff to show that "the defendant's conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *Lourcey*, 146 S.W.3d at 51; *Bain*, 936 S.W.2d at 623. The third element requires emotional distress which is "so severe that no reasonable [person] could be expected to endure it." *Levy v. Franks*, 159 S.W.3d 66, 85 (Tenn.Ct.App. 2004). The serious mental injury or emotional distress must be more than "the transient and trivial emotional distress [that] is a part of the price of living among people". *Id.*

**1048**

Here, Plaintiff has failed to allege any facts which satisfy the three elements of intentional infliction of emotional distress under Tennessee law. The Court has already determined that Graffagnino was not acting as the agent of Defendants when he gave his affidavit in the Samples Litigation. However, even if the Court had determined an agency relationship, Plaintiff does not allege any intentional or reckless conduct on the part of Graffagnino or the Defendants. Plaintiff does not allege that the Defendants engaged in any outrageous behavior. Finally, Plaintiff does not allege that he suffered any emotional distress, severe or otherwise. (Compl.¶¶ 16–17.) As a result, Plaintiff's intentional infliction of emotional distress claim should be dismissed.

Accordingly, had the Court not dismissed Plaintiff's claims for lack of personal jurisdiction, Plaintiff's claims would be dismissed for Plaintiff's failure to allege facts in his Complaint to support the essential elements of his three claims.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED. All three of Plaintiff's claims against the Defendants are DISMISSED. Defendants' Motion to Transfer is DENIED as moot.

So ORDERED.