Helen BURK, et al.

v.

RHA/SULLIVAN, INC., d/b/a The Wexford House, and RHA Health Services, Inc.

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

Sept. 20, 2006.

Oct. 2, 2006.

Permission to Appeal Denied by Supreme Court Jan. 29, 2007.

Thomas D. Dossett, Kingsport, Tennessee, and J. Farrest Taylor, Dothan, Alabama, for the Appellants, Helen Burk, Patricia Hart, Thelma Ratliff, Glenda Evjen, and Barbara Ratliff.

Darryl G. Lowe, Knoxville, Tennessee, for the Appellees, RHA/Sullivan, Inc., and RHA Health Services, Inc.

## OPINION

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL PICKENS FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

In this malpractice action, Plaintiffs allege that the negligence of Defendants' nursing home staff proximately caused the death of Edwin Ratliff. Mr. Ratliff suffered from dementia, Alzheimer's disease, and numerous other medical conditions. While Mr. Ratliff was a resident of Defendants' nursing home, he developed a severe scrotal infection requiring admission to a local hospital. Following his admission on September 8, 2003, at least three medical personnel at the hospital told Plaintiffs that this was the worst case of neglect they had ever seen. Mr. Ratliff died on November 4, 2003. Plaintiffs filed this complaint on September 30, 2004. The trial court granted Defendants' motion for summary judgment, finding that Plaintiffs filed their complaint after the one-year statute of limitations had expired. After careful review, we hold that the Plaintiffs had notice of their claim no later than September 9, 2003, and so the discovery rule was inapplicable. However, pursuant to Tenn. R. App. P. 13, we remand to the trial court to allow the parties to present proof of Mr. Ratliff's mental state as it may be relevant to the statute of limitations for Plaintiffs' claim pursuant to

Tenn.Code Ann. § 28–1–106 in light of the Tennessee Supreme's Court's recent holding in *Abels v. Genie Industries, Inc.*, 202 S.W.3d 99 (Tenn. 2006).

## I. Background

Edwin Ratliff was admitted to the Wexford House, a nursing home in Sullivan County, in early 2000 with dementia, Alzheimer's disease, and numerous other medical problems. Due to Mr. Ratliff's advanced age and health condition, he was dependent upon nursing staff at Wexford House to feed him and take care of his hygiene needs. Two of Mr. Ratliff's daughters, Plaintiffs Patricia Hart and Helen Burk, held powers of attorney for him. While Mr. Ratliff was a resident of Wexford House, staff at the facility reassured Mr. Ratliff's family about his condition and the quality of care that he was receiving.

On August 4, 2003, Mr. Ratliff, age 83, was transferred to Wellmont Holston Valley Medical Center for possible placement of a suprapubic catheter.[1] However, Mr. Ratliff was unable to have the catheter implanted due to complications. He was returned to Wexford House on August 23, 2003, with scrotal swelling and bleeding from the dressing which had been placed on his pubic area. Plaintiffs claim that between August 23, 2003, and September 8, 2003, nurses at Wexford House noted several times that Mr. Ratliff was experiencing severe swelling in the scrotal area, but did not notify a physician.

On September 7, 2003, Mr. Ratliff's daughter, Plaintiff Glenda Evjen, visited her father at Wexford House. While there, she observed that Mr. Ratliff had a high fever, as well as a swollen scrotum and discolored pubic area. Ms. Burk noted on the same day that Mr. Ratliff's scrotum "was the size of a large balloon" and had black and green pus oozing from it. Mr. Ratliff's wife, Plaintiff Thelma Ratliff, also visited Mr. Ratliff on that day and noticed that his scrotum was swollen to "double its normal size." The next day, Mr. Ratliff was transported to Indian Path Medical Center for treatment of what Wexford House staff identified as a "ruptured scrotum." On September 10, 2003, Mr. Ratliff underwent surgery for incision and debridement of scrotal gangrene.

While Mr. Ratliff was being treated at Indian Path Medical Center, a wound care specialist told Mr. Ratliff's family that this was the worst case of neglect she had ever seen. An emergency-room nurse made a similar comment on September 8, 2003. Dr. Everhart, the physician who admitted Mr. Ratliff to Indian Path Medical Center, told Ms. Hart that Mr. Ratliff should not have been left in the condition he was in and that Dr. Everhart had never seen such neglect. Ms. Hart and other family members told the hospital staff that they were dissatisfied with Wexford House and did not want Mr. Ratliff sent back there.

On September 9, 2003, Ms. Burk called the Tennessee Department of Health to complain about Wexford House's treatment of Mr. Ratliff. The Department of Health responded 10 days later, notifying Plaintiffs that their "allegations could not be substantiated" by the person who investigated the complaint.

Mr. Ratliff was released from Indian Path Medical Center on September 15, 2003. The hospital's discharge summary noted Mr. Ratliff's "longstanding dementia." As to his general state of mind, the hospital record stated the following: "Overall, he is in the fetal position. He answers 'yeah' to all questions." Rather

---

1. A suprapubic catheter is a flexible tubular device that is inserted through the abdominal wall into the bladder. The device is used to pass fluids to and from the urinary tract.

than returning Mr. Ratliff to Wexford House upon his discharge from the hospital, Plaintiffs arranged for him to stay at Church Hill Health Care and Rehabilitation Center. Mr. Ratliff was hospitalized on two subsequent occasions for treatment of pneumonia and other health problems. He died on November 4, 2003, at Bristol Hospice House. Senility was listed as the primary cause of death on Mr. Ratliff's death certificate, with other significant conditions listed as dementia, periferal vascular disease with ischemia, diabetes, and aspiration.

On September 30, 2004, Plaintiffs, as spouse, daughters, and co-executors of Mr. Ratliff's estate, filed this action for wrongful death and loss of consortium against RHA/Sullivan Inc., d/b/a The Wexford House and RHA Health Services, Inc. Plaintiffs alleged that Mr. Ratliff's death was the result of "either gross negligence or potentially intentional or malicious conduct in either failing or refusing to assess and timely and appropriately respond to medical problems suffered by Edwin Ratliff while a patient at Wexford House." Defendants moved for summary judgment, asserting that Plaintiffs' claim was barred by the one-year statute of limitations as set forth in Tenn.Code Ann. §§ 29–26–116(a) and 28–3–104. The trial court granted Defendants' motion, finding that the Plaintiffs "were aware of their claim resulting from care and treatment at Defendants' facility on or before September 10, 2003," thus making the filing of Plaintiffs' suit on September 30, 2004, untimely. Plaintiffs appeal.

## II. Issue

The issue we address in this appeal is whether the trial court erred in granting summary judgment to the Defendants based upon the expiration of the statute of limitations.

## III. Standard of Review

Summary judgment is appropriate only when the moving party demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The burden of proof rests with the moving party, who must establish that its motion satisfies these requirements. *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000). If the moving party makes a properly supported motion, the burden shifts to the nonmoving party to establish the existence of disputed material facts. *Id.* (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn.1993)). The nonmoving party may not simply rely upon the pleadings, but must instead set forth specific facts, by affidavits or other discovery materials, demonstrating the existence of a genuine issue of material fact for trial. *Byrd*, 847 S.W.2d at 211. The Supreme Court has emphasized that "genuine issue" in this context "refers to genuine factual issues and does not include issues involving legal conclusions to be drawn from the facts." *Id.* (citing *Price v. Mercury Supply Co.*, 682 S.W.2d 924, 929 (Tenn.Ct.App.1984)).

The standards governing the assessment of evidence in the summary judgment context are well established. Courts must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. See *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn.1997); *Byrd*, 847 S.W.2d at 210–11. Summary judgment is appropriate only when the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. See *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn.1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn.1995).

Because a trial court's decision to grant a motion for summary judgment is solely a matter of law, it is not entitled to a presumption of correctness. See *Staples*, 15 S.W.3d at 88; *Carvell*, 900 S.W.2d at 26. Consequently, our task is to review the record to determine if the requirements of Rule 56.04 of the Tennessee Rules of Civil Procedure have been met. *Staples*, 15 S.W.3d at 88.

## IV. Analysis

Plaintiffs assert that the trial court erred in finding their claim barred by the statute of limitations. Tennessee law does not specify a statute of limitations for wrongful death actions. Rather, courts have uniformly applied the one-year limitations period for personal injuries, as found in Tenn.Code Ann. § 28–3–104. *Steele v. Tennessee Jaycees, Inc.*, No. 01–A–01–9505–CH00214, 1995 WL 623067, at *2 (Tenn. Ct.App. M.S., filed Oct. 25, 1995); see also *Jones v. Black*, 539 S.W.2d 123 (Tenn. 1976). The statute of limitations for medical malpractice cases is one year, but "[i]n the event the alleged injury is not discovered within such one (1) year period, the period of limitation shall be (1) year from the date of discovery." Tenn.Code Ann. § 29–26–116(a).

Plaintiffs invoke the "discovery rule" set forth above as a means of saving their claim from summary judgment. Plaintiffs state that they did not learn of a potential cause of action against Defendants until well after Mr. Ratliff's death, following consultation with an attorney and subsequent investigation. Mr. Ratliff died less than a year before Plaintiffs filed suit. Therefore, Plaintiffs assert that their lawsuit was not barred by the statute of limitations, because they filed the claim within a year of discovering their cause of action against Defendants.

The Tennessee Supreme Court adopted the discovery rule more than 30 years ago in *Teeters v. Currey*, 518 S.W.2d 512, 517 (Tenn.1974). In *Teeters*, the plaintiff discovered that she was pregnant two and a half years after undergoing a tubal legation for the purpose of sterilization. *Id.* at 512. Eleven months after learning of her pregnancy, she sued the doctor who had performed the surgery. *Id.* at 513. The trial court granted the defendant's motion for summary judgment based on the statute of limitations. *Id.* at 514. The Supreme Court reversed, stating, "We find it difficult to embrace a rule of law requiring that a plaintiff file suit prior to knowledge of his injury or, phrasing it another way, requiring that he sue to vindicate a nonexistent wrong, at a time when injury is unknown or unknowable." *Id.* at 515. The following year, the General Assembly codified the discovery rule in the Medical Malpractice Review Board and Claims Act. *Puckett v. Life Care of America*, No. E2004–00803–COA–R3–CV, 2004 WL 2138337, at *4 (Tenn. Ct.App. E.S., filed Sept. 24, 2004); see Tenn. Code Ann. § 29–26–116(a)(2).

Under the discovery rule, the statute of limitations in a medical malpractice case begins to run "when the patient discovers, or reasonably should have discovered (1) the occasion, the manner, and the means by which the breach of duty that caused his or her injuries occurred, and (2) the identity of the person who caused the injury." *Id.* However, the plaintiff is not entitled to wait until he or she knows all of the injurious consequences caused by the alleged negligence before filing suit. *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn.1998). Instead, "the statute of limitations is tolled only during that period of time when the plaintiff has *neither actual nor constructive knowledge* of (1) the injury, (2) the wrong-

ful conduct causing that injury, and (3) the identity of the party or parties who engaged in that wrongful conduct." *Fluri v. Fort Sanders Regional Medical Center*, No. E2005–00431–COA–R3–CV, 2005 WL 3038627, at *4 (Tenn. Ct.App. E.S., filed Nov. 14, 2005) (emphasis added).

■ Determining when a plaintiff acquired *constructive* knowledge of those elements is generally a question for the trier of fact. *Id.* However, the same is not true of a case in which the plaintiff had *actual* knowledge of a tortious injury and of the alleged tortfeasor's identity. We have recognized that "a plaintiff has actual knowledge of an injury where there has been an expert opinion given of such injury, i.e. where the defendant admitted malpractice, or another expert opined that there was malpractice." *Matz v. Quest Diagnostics Clinical Laboratories, Inc.*, No. E2003–00167–COA–R3–CV, 2003 WL 22409452, at *3 (Tenn. Ct.App. E.S., filed Oct. 22, 2003).

A case that is particularly instructive on the issue of notice is *Draper v. Thorne*, No. 01–A–019008CV00305, 1991 WL 7809 (Tenn. Ct.App. M.S., filed Jan. 30, 1991). Mr. Draper visited his doctor for diagnosis and treatment of severe abdominal pains and a low-grade fever in early January 1987. *Draper*, 1991 WL 7809, at *2. At that time, Mr. Draper asked the doctor whether he had appendicitis. The doctor replied no, diagnosed Mr. Draper with diverticulitis, and prescribed antibiotics for him. *Id.* The prescription did not relieve Mr. Draper's pain, so the doctor prescribed a pain-killer following a telephone complaint from Mrs. Draper. *Id.* at *3. The following week, Mr. Draper saw the doctor again, this time with reduced pain, but increased white cell count. The doctor did not palpate Mr. Draper's abdomen to see if he might have appendicitis. *Id.* Two days later, Mr. Draper called the doctor because his symptoms had worsened; the

doctor advised him to continue the drug therapy he had prescribed. Six days after that, Mr. Draper again saw the doctor, who advised him to continue the drug therapy for another 48 hours before seeing a surgeon. Mr. Draper refused to wait another 48 hours, and he was sent to a surgeon immediately. *Id.* The surgeon examined Mr. Draper, as did an associate of the surgeon. Both agreed that Mr. Draper had appendicitis and associated pelvis abscesses, and they recommended immediate surgery. *Id.*

In December 1987, Mr. Draper's original doctor visited him and admitted that he (the doctor) should have gotten Mr. Draper to a surgeon sooner. Mr. Draper testified that his first thoughts about malpractice occurred after that conversation. *Draper*, 1991 WL 7809, at *3. Mr. Draper filed his complaint for malpractice against the doctor on December 14, 1988. *Id.* at *1. The trial court denied the defendant doctor's motion for summary judgment based on the statute of limitations, and an interlocutory appeal was granted. *Id.* On appeal, we reversed and dismissed the case, finding from the undisputed facts that Mr. Draper had knowledge of his injury and of his doctor's malpractice more than a year before he filed suit. *Id.* at *3– 4.

> It was not necessary for Mr. Draper to know the recognized standards of acceptable professional practice. He was made aware, by responsible authority, that an error had been committed by defendant and that he had suffered because of that error. The right of action was complete, and Mr. Draper was aware of the events which produced the right of action.

*Id.* at *4.

■ The facts establishing knowledge in this case are even stronger than those in *Draper.* Here, it is undisputed that at

least three medical personnel at Indian Path Medical Center told Plaintiffs that Mr. Ratliff was the worst case of neglect they had ever seen. These communications occurred on September 8 and/or 9, 2003. Prior to Mr. Ratliff's admission to the hospital, several of the Plaintiffs witnessed Mr. Ratliff's swollen scrotum while he was still a resident at Wexford House. They noted his high temperature and even saw pus draining from his scrotum. In fact, Mr. Ratliff's condition was so severe that Plaintiffs insisted he be taken to the hospital. Thus, by September 9, 2003, Plaintiffs were aware that Mr. Ratliff's scrotal gangrene, for which he underwent surgery the following day, may have been caused by the neglect of Wexford House. Plaintiffs then had a duty to investigate and discover whether Defendants were in fact responsible for Mr. Ratliff's injury. Therefore, we find that Plaintiffs had actual knowledge of Mr. Ratliff's injury and that the injury was caused by wrongful conduct of Wexford House on or before September 9, 2003.

Because we find that Plaintiffs had actual knowledge of a potential claim more than one year before they filed suit, we do not need to consider whether Plaintiffs also had constructive knowledge of the cause of action.

■ Plaintiffs assert they were unaware of a potential claim against Defendants "until they met with counsel after Mr. Ratliff's death and upon further investigation after that time." Plaintiffs fail to state a precise date upon which they learned that a cause of action existed, nor do they indicate what additional evidence prompted this conclusion. As we have stated before, "[t]he discovery rule was not meant to allow a party to delay filing his claim until after he has completed the process of discovering all the factors that affect its merits." *Steele,* 1995 WL 623067, at * 5.

■ Furthermore, Plaintiffs' subjective reactions are not controlling of whether the statute of limitations should be tolled under the discovery rule. *Draper,* 1991 WL 7809, at *3. Plaintiffs assert they were unaware of a potential claim against Defendants because they justifiably relied on Defendants' assurances about the quality of care being rendered to Mr. Ratliff, the results of the investigation conducted by the Department of Health, and the causes of death listed on Mr. Ratliff's death certificate, as evidence that Defendants did not act improperly. However, "the issue is not when the plaintiff realized he had a cause of action but when, in the exercise of reasonable care and prudence, an ordinary person could and should have realized that a cause of action existed." *Draper,* 1991 WL 7809, at *3. Even if Plaintiffs were justified in relying upon Wexford House staff, a health department investigator, and the official who prepared Mr. Ratliff's death certificate, such reliance does not negate the statements of hospital personnel who unequivocally told Plaintiffs that Mr. Ratliff had been severely neglected while in the care of Wexford House.

After careful review, we find from the undisputed facts that Plaintiffs had notice of their claim no later than September 9, 2003. Thus, the decision of the trial court regarding the inapplicability of the discovery rule to this action was correct. However, we do not find this issue to be dispositive of this appeal.

■ Although we are generally restricted to considering issues on appeal that were raised by the parties at the trial court level and presented for our review in the parties' appellate briefs, we do have discretion to consider other matters when appropriate. Tennessee Rule of Appellate

Procedure 13(b) provides that an appellate court "may in its discretion consider other issues in order, among other reasons: (1) to prevent needless litigation, (2) to prevent injury to the interests of the public, and (3) to prevent prejudice to the judicial process." Tenn. R.App. P. 13(b). This case fits squarely within the purview of Rule 13(b).

Less than one week before we convened to hear the parties' oral arguments in this case, the Tennessee Supreme Court issued its opinion in *Abels v. Genie Indus., Inc.,* 202 S.W.3d 99 (Tenn. 2006). In *Abels,* the Court answered two certified questions presented to it by the U.S. District Court for the Western District of Tennessee. In doing so, it held that Tennessee's legal disability statute, Tenn.Code Ann. § 28–1–106 (2000), "tolls the statute of limitations for legally disabled individuals for so long as the disability of unsound mind remains, regardless whether such an individual has had a legal guardian appointed to pursue such claims on his behalf." *Abels,* 202 S.W.3d at 101. The statute states:

> If the person entitled to commence an action is, at the time the cause of action accrued, either within the age of eighteen (18) years, or of unsound mind, such person, or such person's representatives and privies, as the case may be, may commence the action, after the removal of such disability, within the time of limitation for the particular cause of action, unless it exceeds three (3) years, and in that case within three (3) years from the removal of such disability.

Tenn.Code Ann. § 28–1–106 (2000).

In *Abels,* Jerry Hunt sustained severe brain injuries on July 7, 2003, while in the course and scope of his employment. *Abels,* at 100. Following the incident, the Circuit Court of Hardin County appointed Mr. Hunt's uncle and work supervisor, Terry Abels, as guardian ad litem for Mr. Hunt. The order granted Mr. Abels "full authority to handle Mr. Hunt's financial affairs." *Id.* Mr. Abels filed a products liability action on Mr. Hunt's behalf on July 6, 2004, in the U.S. District Court for the Western District of Tennessee. On January 3, 2005, Mr. Abels amended the complaint by adding another defendant, Rental Services Corporation ("RSC"). RSC moved for summary judgment based on the one-year statute of limitations for personal injury cases. *Id.* The district court found that the motion "involved determinative issues of state law for which the decisions of [the Tennessee Supreme Court] do not appear to provide controlling precedent." Therefore, rather than ruling on the motion, the district court certified two questions to the Supreme Court pursuant to Tennessee Supreme Court Rule 23. *Id.* at 105. In deciding the second question, the Supreme Court concluded that:

> [T]he disability of unsound mind referenced in Tenn.Code Ann. section 28–1–106 is not removed when the disabled person's legal representative is appointed and/or accepts responsibility for the disabled person's tort claims. Rather the tolling of the statute of limitations continues until the disabled person's mind becomes "sound," or the person dies.[2]

*Abels,* at 105. The High Court further stated that the discovery rule is inapposite so long as the statute of limitations is tolled because of a plaintiff's disability. *Id.*

At oral argument, Plaintiffs' counsel asserted that *Abels* is controlling in this case because Mr. Ratliff was of unsound mind

---

**2.** Upon finding its answer to the second certified question dispositive of the case, the Supreme Court declined to address the first certified question presented by the district court.

during his residency at Wexford House and remained so until his death on November 4, 2003. Two of Mr. Ratliff's daughters held powers of attorney for him. If Plaintiffs' assertions can be substantiated, then under the holding in *Abels*, Plaintiffs' action filed on September 30, 2004, would be timely, as it was commenced within one year of Mr. Ratliff's death. However, it is beyond our province to determine whether Mr. Ratliff was of unsound mind. As used in the legal disability statute, "unsound mind" describes a person who is "incapable of attending to any business, or of taking care of [himself]." *Crawford v. Beatty*, 108 S.W.3d 877, 880 (Tenn.Ct.App.2003). Our Supreme Court has held that in such cases, the statute of limitations is tolled "only if a petitioner shows that he is unable either to manage his personal affairs or to understand his legal rights and liabilities." *Id.* (citing *State v. Nix*, 40 S.W.3d 459, 463 (Tenn. 2001)). Although there is evidence in the record indicating that Mr. Ratliff may have been of unsound mind, this is a factual matter to be decided by the trier of fact. Therefore, we remand this case to allow the parties an opportunity to present proof of Mr. Ratliff's mental state as it may be relevant to the statute of limitations for Plaintiffs' claim pursuant to Tenn.Code Ann. § 28–1–106 and the authority of *Abels v. Genie Industries, Inc.*, 202 S.W.3d 99 (Tenn. 2006).

## V. Conclusion

In summary, we find that the trial court was correct in granting summary judgment to Defendants on the discovery rule issue. However, given the Supreme Court's recent decision in *Abels v. Genie Industries, Inc.*, 202 S.W.3d 99 (Tenn. 2006), we vacate the trial court's decision and remand this case for a reconsideration of the Defendants' motion for summary judgment in light of *Abels* and the Tennessee legal disability statute, Tenn. Code Ann. § 28–1–106. At our discretion, all costs of appeal are taxed against the Appellants, Helen Burk, Patricia Hart, Thelma Ratliff, Glenda Evjen, and Barbara Ratliff.