# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### April 13, 2015 Session

## SUSAN LEE PHILLIPS, Executrix and Surviving Spouse of ROBERT WAYNE PHILLIPS, Deceased v. GARY Q. CASEY, M.D., ET AL.

### Appeal from the Circuit Court for Sullivan County
#### No. C40306(C)        E.G. Moody, Judge

---

### No. E2014-01563-COA-R9-CV – Filed July 21, 2015

---

This is a health care liability[1] action. The plaintiff's late husband died following a bilateral tonsillectomy surgery. An autopsy determined that the cause of death was angioedema. The plaintiff filed suit against the defendants exactly one year after her husband's death. The complaint did not comply with the pre-suit notice requirements for health care liability suits. The plaintiff voluntarily dismissed the suit without prejudice and re-filed suit. The defendants moved to dismiss, claiming that the re-filed suit was barred. The trial court denied the motion to dismiss and a subsequent motion to reconsider but granted permission to file an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. We granted permission to appeal and now affirm the decision of the trial court.

### Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Affirmed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and D. MICHAEL SWINEY, J., joined.

Jimmie C. Miller and Meredith B. Humbert, Kingsport, Tennessee, for the appellants, Gary Q. Casey, M.D. and Mountain Region Family Medicine, P.C.

---

[1]Tennessee Code Annotated section 29-26-101 now defines most all cases occurring in a medical context as "health care liability actions." The statute specifies that such an action "means any civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability, on which the action is based." *See* Acts 2011, ch. 510, § 8. Effective April 23, 2012, the term "health care liability" replaced "medical malpractice" in the Code. *See* Acts 2012, ch. 798. The provisions of the revised statute apply to this action.

David W. Blankenship and C. Christopher Raines, III, Kingsport, Tennessee, for the appellee, Susan Lee Phillips, Executrix and Surviving Spouse of Robert Wayne Phillips.

**OPINION**

**I. BACKGROUND**

Susan Lee Phillips ("Wife") brought this action on behalf of her late husband, Robert Wayne Phillips ("Husband"), who was a patient of Gary Q. Casey ("Dr. Casey") from 1999 to 2012. In either 2011 or 2012, Dr. Casey diagnosed Husband with angioedema, a condition that occasionally causes rapid swelling of the tissue beneath the skin. Dr. Casey proscribed Lisonipril to Husband to treat a separate diagnosis of hypertension. Later, it was determined that Husband was allergic to Lisonipril. Dr. Casey then prescribed Losartan for the same hypertension. Husband last visited Dr. Casey on March 12, 2012.

On April 2, 2012, Husband went to Dr. Bruce Abkes ("Dr. Abkes") for a bilateral tonsillectomy. He died at approximately 8:15 p.m. that evening. An autopsy was performed on Husband. The autopsy listed the primary cause of death as angioedema and the secondary cause of death as bilateral tonsillectomy. Wife received a copy of the autopsy on July 3, 2012. Wife later hired counsel, who sent a letter to Dr. Casey dated January 30, 2013, informing him of a potential health care liability suit against him. Wife filed suit, on April 2, 2013, against Dr. Casey and his employer, Mountain Region Family Medicine, P.C. ("Mountain Region"). Wife alleged that Dr. Casey was liable for the death of Husband for two reasons: (1) Dr. Casey's prescription of medications known to aggravate the symptoms of angioedema, despite diagnosing Husband with angioedema; and (2) Dr. Casey's failure to inform Dr. Abkes of Husband's angioedema condition before the bilateral tonsillectomy surgery.

Dr. Casey and Mountain Region (collectively "Health Care Providers") moved to dismiss the suit on April 19, 2013. Health Care Providers argued, and Wife later conceded, that the letter did not satisfy the pre-suit notice requirements under Tennessee Code Annotated section 29-26-121, the applicable statute governing medical malpractice actions. Specifically, Wife did not provide pre-suit notice to Mountain Region and did not provide Dr. Casey with the HIPAA form authorizing the release of medical records. On May 10, 2013, Wife's initial complaint against Health Care Providers was dismissed without prejudice.

On June 17, 2013, Wife sent proper pre-suit notice to Health Care Providers, informing them of the potential health care liability suit against them. Wife re-filed her suit against Health Care Providers on August 30, 2013. Health Care Providers moved to dismiss the re-filed complaint, arguing that the claim was barred by the applicable statute of limitations. Health Care Providers contended that the initial complaint was untimely

because it was not filed within one year of Husband's final visit to Dr. Casey on March 12, 2012.  Due to the deficiencies of the initial complaint, Health Care Providers argued that Wife was not entitled to rely on the saving statute, codified at Tennessee Code Annotated section 28-1-105.  Wife responded that the diagnosis of angioedema combined with the improper prescription of Lisonipril and Losartan remained a dormant injury and that the earliest she could have reasonably known of any malpractice was April 2, 2012, the day Husband died.  Furthermore, Wife argued that she was allowed to correct a statutory deficiency by re-filing her complaint.

Following a hearing, the trial court denied the motion to dismiss.  Health Care Providers filed a motion to reconsider and motion for a Tennessee Rule of Appellate Procedure 9 interlocutory appeal.  Following a hearing, the trial court denied the motion to reconsider but granted the motion for an interlocutory appeal.  This court subsequently granted permission for an interlocutory appeal.

## II.  ISSUE

Unlike an appeal as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure, "in which both the appellant and the appellee have broad latitude with regard to the issues that may be raised," the questions we may address are limited to "those matters clearly embraced within" the issues certified by the trial court.  *Sneed v. The City of Red Bank, Tennessee*, 459 S.W.3d 17, 22 (Tenn. 2014) (internal citations omitted).  The issue presented in this appeal is as follows:

> Whether Tennessee Code Annotated section 29-26-121 permits a plaintiff to take a voluntary nonsuit pursuant to Tennessee Rules of Civil Procedure 41.01 with a motion to dismiss pending, resend notice of intent to the providers, and then refile a new action within the original statute of limitations or in accordance with the savings statute.

## III.  STANDARD OF REVIEW

"The proper way for a defendant to challenge a complaint's compliance with Tennessee Code Annotated section 29-26-121 and Tennessee Code Annotated section 29-26-122 is to file a Tennessee Rule of Procedure 12.02 motion to dismiss." *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012).  When reviewing a lower court's decision on a motion to dismiss, the issues raised involve questions of law. *Winchester v. Little*, 996 S.W.2d 818 (Tenn. Ct. App. 1998).  Because the trial court's denial of Health Care Providers' motion to dismiss involves a question of law, this court must review the decision *de novo* with no presumption of correctness.  *Myers*, 382 S.W.3d at 307 (citing *Graham v. Caples*, 325 S.W.3d 578, 581 (Tenn. 2010)).  We

construe the complaint liberally in favor of the plaintiff, and a motion to dismiss should be denied unless the plaintiff can prove no set of facts that would entitle him to relief. *Wilson v. Harris*, 304 S.W. 3d 824 (Tenn. Ct. App. 2009).

This appeal also involves the interpretation of statutes. Statutory construction is a question of law that is reviewed de novo without any presumption of correctness. *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009). This court's primary objective is to carry out legislative intent without broadening or restricting the Act beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the legislature is not violated by so doing. *In re C .K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we should apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004).

## IV. DISCUSSION

Health Care Providers first argue that the saving statute "does not serve to absolve the deficiencies associated with the original filing of Wife's health care liability action because the original action was not timely commenced." According to Health Care Providers, the alleged negligence occurred when Dr. Casey prescribed Husband Losartan in February of 2012. They contend that the initial complaint was untimely because Husband's last visit to Dr. Casey occurred in March of 2012. Wife responds that she was not put on sufficient notice of Husband's injury until either July 3, 2012, when she received the autopsy report, or March 2013, when she received the medical expert's findings.

In order to determine whether Wife may rely on the saving statute, the first question to consider is whether Wife's original action was "timely commenced." According to Tennessee Code Annotated section 29-26-101, a health care liability action means "any civil action […] alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based." Tenn. Code Ann. § 29-26-101(a)(1). "The statute of limitations in health care liability actions shall be one (1) year as set forth in section 28-3-104." Tenn. Code Ann. § 29-26-116(a)(1). However, "[i]n the event the alleged injury is not discovered within such one-year period, the period of limitation shall be (1) year from the date of such discovery." Tenn. Code Ann. § 29-26-116(a)(2). This statutory subsection is known as the "discovery rule," and serves to protect a would-be plaintiff from the potentially "intolerable result of barring a patient's medical malpractice claim before the patient knows or should have known that the claim exists" *Green v. Sacks*, 56 S.W.3d 513, 522 (Tenn. Ct. App. 2001) (quoting *Foster v. Harris*, 633 S.W.2d 304, 305 (Tenn. 1982)).

While the discovery rule allows for additional time if the injury is not readily discernible, the statute of limitations begins to run "when the patient discovers, or reasonably should have discovered (1) the occasion, the manner, and the means by which the breach of duty that caused his or her injuries occurred, and (2) the identity of the person who caused the injury." *Burk v. RHA/Sullivan, Inc.*, 220 S.W.3d 896, 900 (Tenn. Ct. App. 2006) (citing *Foster*, 633 S.W.2d at 305). The statute of limitations begins to run "so long as the plaintiff is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct." *Stanbury v. Bacardi*, 953 S.W.2d 671, 678 (Tenn. 1997) (quoting *Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994)). The statute of limitations will toll only when "the plaintiff has neither *actual* nor *constructive* knowledge of (1) the injury, (2) the wrongful conduct causing that injury, and (3) the identity of the party or parties who engaged in that wrongful conduct." *Burk*, 220 S.W.3d at 900-901 (citing *Fluri v. Fort Sanders Reg. Med. Ctr.*, No. E2005-00431-COA-R3-CV, 2005 WL 3038627 at *4 (Tenn. Ct. App. 2005)) (emphasis added).

A plaintiff has actual knowledge of an injury when an expert opines that an alleged action constituted malpractice, or when a defendant admits malpractice. *Id.* at 901. Constructive knowledge of injury occurs when a plaintiff becomes aware, or should have become aware, "of facts sufficient to put a reasonable person on notice that an injury has been sustained as a result of defendant's negligent or wrongful conduct." *Lane-Detman, L.L.C. v. Miller & Martin*, 82 S.W.3d 284, 295 (Tenn. Ct. App. 2002). The question of whether a plaintiff had actual knowledge of injury is a question of law, appropriate for judicial determination, but the question of whether a plaintiff had constructive knowledge "is generally a question for the trier of fact." *Burk*, 220 S.W.3d at 901.

"All civil actions are commenced by filing a complaint with the clerk of the court. An action is commenced within the meaning of any statute of limitations upon such filing of a complaint." Tenn. R. Civ. P. 3. In 2013, the Tennessee Supreme Court concluded that because the plain language of section 29-26-121(a)(1) does not address the commencement of an action, "[t]he pre-suit notice requirement […] does not alter the traditional definition of the commencement of an action." *Rajvongs v. Wright*, 432 S.W.3d 808, 812 (Tenn. 2013). Following the guidelines set by the Supreme Court, the court in *Cartwright* determined that proper pre-suit notice under Tennessee Code Annotated section 29-26-121 was not a prerequisite to the commencement of an action. *Cartwright v. DMC-Memphis Inc.*, No. W2013-01614-COA-R3CV WL 6908420 at *8 (Tenn. Ct. App. 2014). Therefore, Wife's action in the case at hand commenced upon the filing of the initial complaint on April 2, 2013. In order for her action to be "timely commenced," Wife must not have been aware of the alleged injury to Husband before April 2, 2012.

Actual knowledge of injury can result from the admission of liability or from an expert witness opining that an injury was the result of health care liability. *Burk*, 220

S.W.3d at 901. Wife received the autopsy report on July 3, 2012, whereupon Wife was put on notice that the primary cause of death was angioedema, a condition allegedly diagnosed by Dr. Casey in 2011. Thereafter, Wife received a statement from an expert witness in March 2013, asserting that Husband's death was the result of malpractice. This court considers either the receipt of the autopsy report or the information obtained through the expert witness sufficient to put Wife on actual notice of an injury as a result of Dr. Casey's alleged liability. Since the earliest Wife reasonably could have had actual notice of the injury was upon the receipt of the autopsy report dated July 3, 2012, Wife's initial complaint was timely commenced for the purposes of *actual* knowledge.

Determination of whether Wife had *constructive* knowledge of the injury is a different question. "Usually, the determination of when a plaintiff had constructive knowledge of facts sufficient to put him or her on notice pursuant to the discovery rule is … a question for the trier of fact." *Young ex rel. Young v. Kennedy*, 429 S.W.3d 536, 557 (Tenn. Ct. App. 2013) (citing *McIntosh v. Blanton*, 164 S.W.3d 584, 586 (Tenn. Ct. App. 2004)). Judicial determinations on the occurrence of constructive knowledge are appropriate only "where the undisputed facts demonstrate that **no** reasonable trier of fact could conclude that plaintiff did not know, or in the exercise of reasonable care and diligence should not have known, that [an injury occurred] as a result of defendant's wrongful conduct." *Id.* at 557-58 (citing *Schmank v. Sonic Auto., Inc.*, No. E2007-01857-COA-R3-CV, 2008 WL 2078076 at *3 (Tenn. Ct. App. 2008) (emphasis added)). "State law strongly favors the resolution of all disputes on their merits, and the savings statute is to be given a broad and liberal construction in order to achieve this goal." *Freeman v. Marco Transp. Co.*, 27 S.W.3d 909, 912 (Tenn. 2000).

This court finds that the undisputed facts demonstrate that a trier of fact could reasonably conclude that Wife did not know of an injury to Husband before April 2, 2012. We first reject Wife's contention that she did not know about the injury until March 2013, when she received the expert's findings. This information amounts to actual knowledge of injury. It is well settled within Tennessee courts that "a plaintiff may not delay filing suit until all the injurious effects or consequences of the alleged wrong are actually known to the plaintiff." *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 533 (Tenn. 1998). However, this court also rejects Health Care Providers' contention that the statute of limitations began to run when Dr. Casey diagnosed Husband with hypertension in 2011.

On April 2, 2012, Husband died at his home. Earlier that day, Husband underwent a bilateral tonsillectomy surgery performed by Dr. Abkes. Certainly, it is not the case that a plaintiff's death serves as the barometer for determining an injury, but a would-be plaintiff should not be required to sue in order to "vindicate a non-existent wrong, at a time when injury is unknown and unknowable." *Teeters v. Currey*, 518 S.W.2d 512, 515 (Tenn. 1974). Even if this court is to consider the alleged mistreatment and subsequent prescription as fairly traceable to the actions of Dr. Casey and appropriately "redressed

by a favorable decision," it would be difficult for this court to conclude that this was an injury in fact. *Lujan*, 504 U.S. at 561.

According to Wife, Dr. Casey prescribed Husband medications known to aggravate the symptoms of angioedema, despite diagnosing him with angioedema sometime in 2011. Wife also alleges that Dr. Casey failed to inform Dr. Abkes of Husband's angioedema before he underwent bilateral tonsillectomy surgery. Husband died later that day, but the cause of death was not known until the autopsy released additional information on the death. Construing Wife's allegations as true, as is appropriate in our review of the trial court's decision on a motion to dismiss, we conclude that reasonable minds could differ regarding the date that Dr. Casey's alleged malpractice put Wife on constructive notice of injury.

A patient's trust in his or her doctor cannot be blind, but it also cannot be nonexistent. If we were to accept Health Care Providers' argument that the statute of limitations began to 'run' simply when the allegedly incorrect prescription or treatment occurred, the inherent trust that exists between a doctor-patient would vanish. No longer could a patient take his or her doctor's advice freely; instead, patients would be tasked with independently fact-checking information on conditions and drugs. Husband was a patient of Dr. Casey's for over 13 years and had no reason to believe that his scratchy throat, at most the innocuous side effect of a medication, would result in a legally cognizable injury. The aforementioned reasons lead this court to conclude that the issue of whether Wife timely commenced her action within the applicable statute of limitations is a question of fact, appropriate for a trier of fact to determine. Therefore, we remand this issue back to the trial court to determine whether Wife is entitled to rely on the saving statute to bring her action.

This conclusion does not end our inquiry because Health Care Providers also argue that allowing the re-filing of the complaint in this case essentially provides Wife with a second chance to correct the deficiencies with the initial complaint. They note that "Tennessee Code Annotated section 29-26-121 sets forth clear deadlines for compliance with its requirements and does not include a provision granting Wife a second attempt at compliance after a motion to dismiss was filed by Health Care Providers." Wife concedes that the initial complaint failed to comply with Tennessee Code Annotated section 29-26-121. However, she argues that the statute does not specifically prohibit the refiling of the complaint in order to comply with the statutory requirements.

Under the Medical Malpractice Act, section 29-26-121 sets out pre-suit notification requirements necessary to the commencement of a health care liability claim. Tenn. Code Ann. § 29-26-121. While these requirements are mandatory, the Tennessee Supreme Court has held that a plaintiff is required to meet only substantial, and not strict, compliance with section 29-26-121. *Myers*, 382 S.W.3d at 304; *Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547, 553 (Tenn. 2013). In order to determine

whether a would-be plaintiff meets substantial compliance, courts must view both: (1) the extent of the noncompliance; and (2) whether the noncompliance frustrated the purpose of section 29-26-121, or otherwise prejudiced the defendants. *Stevens*, 418 S.W.3d at 556. The parties agree that the initial complaint did not substantially comply with the applicable pre-suit notice requirements but that the re-filed compliant was sufficient in all respects.

"A court's construction of a statute must begin with the words the legislature has chosen." *Foster v. Chiles*, ___ S.W.3d ___, 2015 WL 343872 at *3 (Tenn. 2015). In *Foster*, the Court provided that "code sections, §§ 29-26-121 and -122, were enacted together as part of the Tennessee Health Care Liability Act; therefore, we interpret these sections together and must presume that the Legislature intended for them to carry different sanctions for noncompliance." *Id.* at *4 (citation omitted). According to the plain meaning of both statutes, it is apparent that section 29-26-121 does not provide a penalty for noncompliance, whereas section 29-26-122 expressly requires a dismissal with prejudice for noncompliance. *Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547, 560-61 (Tenn. 2013). "Although legislative silence is not generally indicative of an intent not to act, *see House v. Estate of Edmondson*, 245 S.W.3d 372, 387 (Tenn. 2008), legislative silence in this particular context offers a strong suggestion that the legislature intended Tenn. Code Ann. §§ 29-26-121 and -122 to function differently." *Stevens*, 418 S.W.3d at 560.

In *Stevens*, plaintiff failed to provide a HIPAA-compliant medical authorization pursuant to section 29-26-121(a)(2)(E). *Id.* at 551. The Tennessee Supreme Court dismissed the case without prejudice due to this error. However, this holding is distinguishable from the case at hand because the plaintiff in *Stevens* sought to excuse compliance by a showing of extraordinary cause. *Id.* Here, Wife voluntarily dismissed the initial suit entirely.

Health Care Providers rely heavily on *Vaughn v. Mountain States Health Alliance*, No. E2012-01042-COA-R3-CV, 2013 WL 817032 at *1 (Tenn. Ct. App. 2013) as justification for dismissal. The plaintiff in *Vaughn* sought to amend the complaint after the statute of limitations had run in order to correct a mistake within the pre-suit notice. 2013 WL 817032 at *1. This court determined that plaintiffs may not amend a complaint in order to correct noncompliance with the pre-suit notice requirements. *Id.* This holding is distinguishable from the case at hand because Wife never sought to amend the initial complaint.

In *Myers*, the plaintiff attempted to re-file a voluntarily dismissed health care liability action, but the re-filed complaint did not comply with all of the requirements of section 29-26-121 and -122. *Myers*, 382 S.W.3d at 303. The Tennessee Supreme Court dismissed the re-filed complaint with prejudice due to failure to comply with section 29-26-122. *Id.* at 304. In a similar case, the plaintiff voluntarily dismissed the original

complaint and attempted to re-file the action. *Potter v. Perrigan*, No. E2013-01442-COA-R3-CV, 2014 WL 1415266 at *1 (Tenn. Ct. App. 2014). However, the plaintiff did not send a new pre-suit notice to the defendant prior to re-filing the complaint. This court concluded that plaintiff could not rely on the notice provided prior to filing the original complaint because the re-filed complaint "instituted a new and separate action" *Id.* at *3 (citing *Myers*, 382 S.W.3d at 309). The case before us is distinguishable from both *Potter* and *Myers*. Wife's re-filed complaint does not contain any of the pre-suit notice deficiencies found in the *Myers* re-filed complaint. Likewise, the situation presented here presents the exact opposite situation addressed in *Potter*; *Potter* correctly filed notice in the original action, but not in the re-filed one, while Wife incorrectly filed notice in the original action, but not in the re-filed one.

In deciding whether Wife can re-file a health care liability action after taking a voluntary dismissal, this court turns to the unambiguous language of Rule 41.01 of the Tennessee Rules of Civil Procedure. "[T]he plaintiff shall have the right to take a voluntary nonsuit to dismiss an action without prejudice by filing a written notice of dismissal at any time before the trial of a cause." Tenn. R. Civ. P. 41.01; *Cronin v. Howe*, 906 S.W.2d 910, 914-15 (Tenn. 1995) (providing that the same holds true for timely filed health care liability actions). "Where the right to take a voluntary dismissal is in the discretion of the trial court, it should be granted absent some showing of plain legal prejudice to the defendant." *Oliver v. Hydro-Vac Servs. Inc.*, 873 S.W.2d 694, 696 (Tenn. Ct. App. 1993) (internal citations omitted). The possibility that defendant might be subjected to a second lawsuit is "insufficient legal prejudice." *Id.* (citing *McCants v. Ford Motor Co.*, 781 F.2d 855 (11th Cir. 1996)).

Health Care Providers argue the re-filed complaint should be dismissed because no provision exists within Tennessee Code Annotated section 29-26-121 that allows a plaintiff to re-file his or her complaint solely to comply with the pre-suit notice requirements. We decline to adopt this rationale. As previously discussed, it is our role to interpret the words chosen by the legislature in a review of a particular statute. *Foster*, 2015 WL 343872 at *3. Nothing within a plain language interpretation of Tennessee Code Annotated sections 29-26-121 or -122 supports the conclusion that a plaintiff in a health care liability action is not allowed to re-file a claim after taking a voluntary dismissal. A plain language interpretation of Rule 41.01 of the Tennessee Rules of Civil Procedure results in the same conclusion.

The General Assembly clearly expressed differing treatment for violations of sections 29-26-121 and -122, just as it did under Rule 41.01 for the case when a motion for summary judgment is pending. Rule 41.01(1) provides in pertinent part as follows: "Subject to the provisions of Rule 23.05, Rule 23.06, or Rule 66 or of any statute, and except when a motion for summary judgment made by an adverse party is pending, the plaintiff *shall* have the right to take a voluntary nonsuit." (Emphasis added). "In most situations a voluntary nonsuit may be taken as a matter of right, but such is not the case

when a motion for summary judgment is pending." *Clevenger v. Baptist Health Sys.*, 974 S.W.2d 699, 700 (Tenn. Ct. App. 1997). Had the Legislature intended to bar a plaintiff's re-filed health care liability action due to either: (1) deficiencies in the original complaint; or (2) a defendant's motion to dismiss, it would have plainly done so as it did with a motion for summary judgment.

Finally, it is axiomatic that a re-filed complaint does not represent a continuation of the original complaint, but rather "the institution of a new and independent claim." *Myers*, 382 S.W.3d at 309. A re-filed complaint would not bear a new docket number if the legislature intended that complaint to be a continuation of the original action. *Id.* The Tennessee Supreme Court's recent holding in *Foster* dealt with the issue of "whether notice given before the filing of the first complaint is sufficient pre-suit notice for a suit that is re-filed after the dismissal of the first complaint." 2015 WL 343872 at *3. In dismissing plaintiff's complaint without prejudice, the Court concluded that, while it does not favor dismissals on procedural grounds, it cannot "engage in a strained interpretation of the statute to reach a desired result." *Id.* at *4. This court declines to adopt a 'strained' interpretation towards section 29-26-121 or Rule 41.01 that would bar Wife's present action; to 'read in' a new statutory provision not included by the legislature would amount to nothing more than legislating from the bench, exactly what the judicial system seeks to avoid. Accordingly, we conclude that Wife is not barred from re-filing a health care liability action even though she voluntarily dismissed the initial complaint solely to correct her failure to comply with the statutory requirements applicable in health care liability actions.

## V. CONCLUSION

The judgment of the trial court is affirmed and the cause is remanded for such further proceedings as necessary. Costs of the appeal are assessed to the appellants, Dr. Gary Q. Casey, M.D., and Mountain Region Family Medicine, P.C.

_____
JOHN W. McCLARTY, JUDGE

- 10 -