IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 27, 2021 Session

## PAMELA LOTT v. VERONICA MALLETT M.D. ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-001323-18  Felicia Corbin Johnson, Judge**

———————————————————

**No. W2020-01233-COA-R3-CV**

———————————————————

Appellant initially filed suit against a doctor and the hospital where she had surgery. Nearly a year later, Appellant amended her complaint to add the doctor's employer as an additional defendant. The first suit was voluntarily dismissed, and the plaintiff refiled against the doctor and her employer, relying on the savings statute. The trial court dismissed the claims against the doctor on the basis that Appellant failed to substantially comply with the Tennessee Code Annotated section 29-26-121 in the second action and therefore was not entitled to an extension on the savings statute. The trial court granted the employer summary judgment on the basis that the first complaint naming it was not filed within the applicable statute of limitations. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN and CARMA DENNIS MCGEE, JJ., joined.

Terrell Lee Tooten, Cordova, Tennessee, for the appellant, Pamela Lott.

Natalie Marie Bursi, Margaret Cooper Roney, Robert W. Reid, Memphis, Tennessee, for the appellees, Veronica Mallett, M.D., and University of Tennessee Medical Group.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

On May 7, 2008, Plaintiff/Appellant Pamela Lott ("Appellant") underwent a vaginal vault suspension and total abdominal hysterectomy performed by Defendant/Appellee Veronica Mallett, M.D., and Kathryn Providence, M.D. at the Regional Medical Center in

Memphis.[1] On August 7, 2009, Appellant filed a complaint against Dr. Mallett, Dr. Providence, and the Regional Medical Center.[2] Therein, Appellant alleged that she was not properly informed of the risks of the procedure, that the procedure was performed incorrectly, and that she suffered permanent and severe injuries as a result of the defendants' negligence.

On June 2, 2010, Appellant filed her First Amended Complaint, which named Defendant/Appellee University of Tennessee Medical Group ("UTMG") as a defendant for the first time. UTMG then filed a motion to dismiss the amended complaint, arguing that Appellant had not complied with Rule 15.01 of the Tennessee Rules of Appellate Procedure and that the amended complaint was filed after the expiration of the statute of limitations. Eventually, the trial court denied UTMG's motion to dismiss the claims against it *in toto*, as there was a disputed issue of fact as to when Appellant knew or should have known that UTMG employed Dr. Mallett. The trial court did, however, grant partial summary judgment to UTMG and Dr. Mallett, dismissing all claims that did not involve lack of informed consent.[3]

Appellant was deposed on April 19, 2012. Trial on the original action was set for November 28, 2016; when Appellant announced that she was not ready to proceed, the matter was dismissed without prejudice by order of November 28, 2016.

Relevant to this appeal, on July 31, 2017, Appellant sent pre-suit notice to Dr. Mallett, which indicated that notice was also being provided to UTMG. The notice stated that "[e]ach provider above is being sent a HIPAA-compliant medical authorization permitting each to obtain complete medical records from each other." Attached to the notice were three separate HIPAA medical authorization forms.[4]

Appellant thereafter refiled her lawsuit on March 22, 2018, naming Dr. Mallett and UTMG as the defendants. According to the complaint, UTMG employed both Dr. Mallett and Dr. Providence. As such, Appellant alleged that UTMG was vicariously liable for Dr. Mallett's negligence. The complaint raised claims of negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress. In addition, the complaint alleged medical battery/ lack of informed consent, as the informed consent form provided to Appellant "contains information not discussed with her, nor written on the form when she signed it." Appellant sought both compensatory and punitive damages as a result of her injuries.

---

[1] Regional Medical Center was colloquially known as The Med at this time. We use this name as it is used in various documents filed in the trial court.

[2] Appellant's current attorney did not represent her in the first action.

[3] This order granting partial summary judgment remained interlocutory and was never certified as final pursuant to Rule 54.02 of the Tennessee Rules of Appellate Procedure.

[4] The contents of these forms will be discussed in detail, *infra*.

UTMG and Dr. Mallett separately answered the complaint, denying the material allegations contained therein and raising several affirmative defenses. UTMG moved to dismiss the complaint for discovery violations on March 15, 2019. In the alternative, UTMG sought sanctions against Appellant. This motion was eventually denied by the trial court.

Dr. Mallett filed a motion to dismiss on June 20, 2019. In her motion and accompanying memorandum, Dr. Mallett argued that Appellant failed to comply with the Tennessee Health Care Liability Act ("THCLA"), specifically Tennessee Code Annotated section 29-26-121 and -122, in her first lawsuit. Dr. Mallett further argued that Appellant failed to comply with section 29-26-122 in the present lawsuit and that the complaint should therefore be dismissed as filed outside the applicable statute of limitations in the first action.

UTMG filed a second motion to dismiss on the same day. Therein, UTMG argued that Appellant's claims against it should be dismissed because they were not filed within the applicable statute of limitations. UTMG also argued that the action should be dismissed because Appellant failed to comply with pre-suit notice requirements in the first action and with section 29-26-121 in the second action. In time, Appellant responded in opposition to both motions.

Both motions to dismiss were argued on September 26, 2019, and October 30, 2019. During the first hearing, the trial court orally ruled that UTMG's motion to dismiss would be converted to a motion for summary judgment. The trial court therefore allowed Appellant and UTMG to file supplemental briefing. Both Appellant and UTMG subsequently filed supplemental briefs.

Eventually, on April 27, 2020, the trial court entered an order granting Dr. Mallett's motion to dismiss. Specifically, the trial court ruled that Dr. Mallett's argument that Appellant failed to comply with pre-suit notice requirements in her first lawsuit were "not well-taken and should be denied." But the trial court agreed that Appellant failed to comply with Tennessee Code Annotated section 29-26-121 in her second lawsuit:

> The Court finds that the Motion to Dismiss of Dr. Mallett for the failure of [Appellant] to substantially comply with Tennessee Code Annotated § 29-26-121 in the present case is well-taken. Specifically, Tennessee Code Annotated § 121(a)(2)(D) requires that "each health care provider that will be a named defendant" be sent written notice of the potential claim that includes "a H1PAA compliant medical authorization permitting-the provider receiving the notice to obtain complete medical records from each other provider being sent a notice[.]" Tenn. Code Ann. § 29-26-121(a)(1), (a)(2)(E). The notice letter [Appellant] sent Dr. Mallett in the present case did not include an authorization which allowed Dr. Mallett

- 3 -

to obtain health information from UTMG, so it did not permit her to obtain complete medical records from each other provider being sent a notice. Dr. Mallett could not obtain or lawfully use medical records and was thereby prejudiced. The [Appellant]; therefore, failed to substantially comply with Tennessee Code Annotated § 29-26-121(a)(2)(E) in the present case.[5]

The trial court further noted that in the absence of substantial compliance with section 29-26-121(a), Appellant was not entitled to the 120-day extension on the statute of limitations. As such, her complaint, filed 480 days following the dismissal of the first action, was barred by the statute of limitations. Finally, the trial court ruled that its decision was final and that there was no just reason to delay entry of judgment under Rule 54.02 of the Tennessee Rules of Appellate Procedure.[6] Appellant thereafter filed a motion to alter or amend, which was eventually denied.

The trial court dismissed the claims against UTMG by order of June 1, 2020. Therein, the trial court rejected UTMG's arguments that Appellant failed to comply with pre-suit notice requirements in either the initial or present lawsuit. But the trial court embraced UTMG's argument that Appellant knew or should have known that UTMG was Dr. Mallett's employer when she signed consent forms in 2008 that stated that The Med was not Dr. Mallett's employer. Further, the trial court ruled that at this time, Appellant "either should have known that Dr. Mallett was employed by UTMG" through which Appellant had been receiving her regular treatment, "or with due diligence, Appellant reasonably could have determined that Dr. Mallett was employed by UTMG based on information available to her prior and after her surgery in 2008, as well as her conduct before and after her surgery." Because the complaint against UTMG was filed more than two years after Appellant was on notice of UTMG's involvement, the trial court ruled that her complaint was barred by the applicable statute of limitations. After a motion to alter or amend this order was denied, Appellant timely appealed the dismissal of both defendants to this Court.

## II. ISSUES PRESENTED

Appellant raises a single issue in this appeal: Whether the trial court erred in

---

[5] The portion of the trial court's written order quoted above inexplicably omits any periods denoting the ends of sentences in all but the second sentence. Based on the trial court's capitalizations, we have inserted periods where we believe they are indicated, in order to aid ease of reading.

[6] Rule 54.02(1) provides that

> When more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the Court, whether at law or in equity, may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

granting the motions to dismiss of Dr. Mallett and UTMG.

## III. DISCUSSION

### *Dr. Mallet*

The trial court dismissed the claims against Dr. Mallett on the basis of Appellant's failure to substantially comply with Tennessee Code Annotated section 29-26-121. According to the Tennessee Supreme Court,

> The proper way for a defendant to challenge a complaint's compliance with Tennessee Code Annotated section 29-26-121 [] is to file a Tennessee Rule of Procedure 12.02 motion to dismiss. In the motion, the defendant should state how the plaintiff has failed to comply with the statutory requirements by referencing specific omissions in the complaint and/or by submitting affidavits or other proof. Once the defendant makes a properly supported motion under this rule, the burden shifts to the plaintiff to show either that it complied with the statutes or that it had extraordinary cause for failing to do so. Based on the complaint and any other relevant evidence submitted by the parties, the trial court must determine whether the plaintiff has complied with the statutes. If the trial court determines that the plaintiff has not complied with the statutes, then the trial court may consider whether the plaintiff has demonstrated extraordinary cause for its noncompliance. If the defendant prevails and the complaint is dismissed, the plaintiff is entitled to an appeal of right under Tennessee Rule of Appellate Procedure 3 using the standards of review in Tennessee Rule of Appellate Procedure 13.

*Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012). Because the trial court's decision on the motion "involves a question of law, our review is de novo with no presumption of correctness." *Id.* (citing *Graham v. Caples*, 325 S.W.3d 578, 581 (Tenn. 2010)).

In Tennessee, any person raising a health care liability claim must give written notice to potential defendants before filing a complaint under the Tennessee Health Care Liability Act ("THCLA"):

> Any person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state.

Tenn. Code Ann. § 29-26-121(a)(1). Pursuant to the statute, the pre-suit notice must include

"[a] HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice." Tenn. Code Ann. § 29-26-121(a)(2)(E). Federal regulations state that the following are requirements for a valid HIPAA authorization:

> (1) Core elements. A valid authorization under this section must contain at least the following elements:
> (i) A description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion.
> (ii) The name or other specific identification of the person(s), or class of persons, authorized to make the requested use or disclosure.
> (iii) The name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure.
> (iv) A description of each purpose of the requested use or disclosure....
> (v) An expiration date or an expiration event that relates to the individual or the purpose of the use or disclosure. . . .
> (vi) Signature of the individual and date. If the authorization is signed by a personal representative of the individual, a description of such representative's authority to act for the individual must also be provided.

45 C.F.R. § 164.508(c)(1). These elements are mandatory for a fully compliant HIPAA authorization. *See **Hamilton v. Abercrombie Radiological Consultants, Inc.***, 487 S.W.3d 114, 119 (Tenn. Ct. App. 2014) (citing 45 C.F.R. § 164.508(c)(1)) (noting that the regulation states that the form "must contain" the core elements listed); see also 45 C.F.R. § 164.508(b)(2) (" An authorization is not valid, if the document submitted has any of the following defects: . . . (ii) The authorization has not been filled out completely, with respect to an element described by paragraph (c) of this section, if applicable[.]").

The Tennessee Supreme Court has held, however, that minor deviations will not always defeat the purpose of the disclosure requirement contained in the THCLA. *See generally **Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.***, 418 S.W.3d 547 (Tenn. 2013). Instead, the Tennessee Supreme court explained that

> "[n]on-substantive errors and omissions" and "[a] plaintiff's less-than-perfect compliance" with [subsection] 29-26-121(a)(2)(E) will "not derail a healthcare liability claim" so long as the medical authorization provided is "sufficient to enable defendants to obtain ‒ and review a plaintiff's relevant medical records." *Id.* Thus, we held that "a plaintiff must substantially comply, rather than strictly comply, with the requirement[ ] of [subsection] 29-26-121(a)(2)(E)."

***Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC***, 433 S.W.3d 512,

519–20 (Tenn. 2014) (quoting **Stevens**, 418 S.W.3d at 554). "In determining whether a plaintiff has substantially complied with a statutory requirement, a reviewing court should consider the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance." **Stevens**, 418 S.W.3d at 556. However, "[b]ecause HIPAA itself prohibits medical providers from using or disclosing a plaintiff's medical records without a fully compliant authorization form, it is a threshold requirement of the statute that the plaintiff's medical authorization must be sufficient to enable defendants to obtain and review a plaintiff's relevant medical records." **Id.** at 555 (citing 45 C.F.R. § 164.508(a)(1)). Thus, as this Court explained,

> In sum, there is no bright line rule that determines whether a party has substantially complied with the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E). However, in order to substantially comply with the statute, a plaintiff must provide a defendant with a HIPAA compliant medical authorization form that is sufficient to allow the defendant to obtain the plaintiff's medical records from the other providers being sent the notice. In this context, substantial compliance requires a degree of compliance that provides the defendant with the ability to access and use the medical records for the purpose of mounting a defense.

**Wenzler v. Xiao Yu**, No. W2018-00369-COA-R3-CV, 2018 WL 6077847, at *5 (Tenn. Ct. App. Nov. 20, 2018) (citations, quotation marks, and brackets omitted).

In this case, the trial court dismissed the claims against Dr. Mallett because the notice letter Appellant sent Dr. Mallett "did not include an authorization that allowed Dr. Mallett to obtain health information from UTMG, so it did not permit her to obtain complete medical records from each other provider being sent a notice." Because Dr. Mallett could not obtain the UTMG records, the trial court ruled that she was prejudiced.

Appellant's argument on appeal appears to be two-fold. First, she contends that Dr. Mallett did receive a medical authorization that allowed her to access Appellant's records from UTMG. Second, she argues that the authorizations were substantially compliant with the HIPAA regulations because Dr. Mallett could still access the records as an employee of UTMG at the time of the allegations; Appellant therefore contends that there was no prejudice to Dr. Mallett.

First, we consider the form that Appellant contends authorized Dr. Mallett to access UTMG's records. It does not. While Dr. Mallett is listed as the "Name of Facility" at the very top of this form, the actual authorization language contained on the form is as follows:



I authorize __UNIVERSITY OF TENNESSEE MEDICAL GROUP__

*(Name of Facility)* or the following person or organization (specify if applicable) to:

disclose my health information to:

*(Name and Address) - Specify Attorney, Insurance, Self, etc*

☑ obtain/request copies of my health information from: __UNIVERSITY OF TENNESSEE MEDICAL GROUP,__
__1407 Union Ave., Memphis, TN 38104__ . *Name and*
*Address) -Specify: Hospital, Doctor, etc.*

Thus, this medical form authorized only that UTMG could obtain records from itself. The authorization did not, however, expressly authorize Dr. Mallett to obtain records from UTMG. Likewise, the other two medical authorizations did not permit Dr. Mallett to obtain medical records from UTMG. Instead, they authorized Dr. Mallett to disclose records to Appellant's attorney and Dr. Mallett to disclose records to UTMG. Thus, Dr. Mallett was not provided with a medical authorization form that expressly permitted her to use and access the records held by UTMG. The authorization was therefore defective as to Dr. Mallett because she did not receive what she was entitled to under the THCLA: a HIPAA-compliant medical authorization permitting her to receive medical records "from each other provider being sent a notice." Tenn. Code Ann. § 29-26-121(a)(2)(E).

We therefore consider whether Appellant's efforts to provide authorizations were substantially compliant with the relevant requirements and whether prejudice resulted. *See Stevens*, 418 S.W.3d at 556. In support of her argument that her HIPAA authorization was substantially compliant, Appellant cites this Court's opinion in ***Hamilton v. Abercrombie Radiological Consultants, Inc.***, 487 S.W.3d 114 (Tenn. Ct. App. 2014). According to Appellant, ***Hamilton*** provides an example of substantial compliance because the plaintiff provided the defendants "sufficient notice to obtain the relevant medical records." ***Id.*** at 122. But ***Hamilton*** is factually distinguishable from the case-at-bar. Importantly, the only deviation at issue in ***Hamilton*** was the failure to complete the "date line" on the HIPAA authorization.[7] ***Id.*** at 116. The deviation in this case involves Appellant's failure to actually authorize Dr. Mallett to obtain records from another named defendant.

As a result, we believe that another case is more directly on point—***Wenzler v. Xiao Yu***, No. W2018-00369-COA-R3-CV, 2018 WL 6077847 (Tenn. Ct. App. Nov. 20, 2018). In ***Wenzler***, the plaintiff sued two parties, a dentist and the dentistry practice that employed him. ***Id.*** at *1. The defendants thereafter filed a motion to dismiss, arguing that the plaintiff

---

[7] In ***Hamilton***, we also took issue with the lack of evidence adduced to show prejudice. ***Id.*** at 122. Since the decision in ***Hamilton***, this Court has repeatedly held that a defendant need not "'test' a deficient authorization to ascertain whether records can be obtained." *See, e.g., **Williams v. Gateway Med. Ctr.***, No. M2018-00939-COA-R3-CV, 2019 WL 1754692, at *5 (Tenn. Ct. App. Apr. 18, 2019) (citing ***J.A.C. by and through Carter v. Methodist Healthcare Memphis Hosps.***, 542 S.W.3d 502, 514 (Tenn. Ct. App. 2016)); ***Dolman v. Donovan***, No. W2015-00392-COA-R3-CV, 2015 WL 9315565, at *5 (Tenn. Ct. App. Dec. 23, 2015). Regardless, as discussed *infra*, Dr. Mallett need not present proof that she could not obtain and use the records because she was barred from doing so by HIPAA.

failed to provide HIPAA-compliant medical authorizations with her pre-suit notice letters; specifically, the defendant noted that the authorization forms provided failed to identify the person or entity that was authorized to receive the disclosure pursuant to the release. In response, the plaintiff argued, inter alia, that the two defendants were essentially a single entity for purposes of medical records because the dentistry practice employed the dentist. *Id.* at *2 ("Plaintiff argued that even though there were "two named defendant medical providers: [the dentist] and [the dentistry practice] ([the dentist's] employer)," there was no 'other' medical provider from whom records would be needed, so the defendants were not prejudiced."). The trial court rejected the plaintiff's argument and granted the motion to dismiss both defendants. *Id.*

On appeal, the defendants conceded that the dentist had no medical records in his possession; the only records were in the possession of the dental practice. Thus, the plaintiff argued that the case "in essence" involved only a single health care provider and that the rule in **Bray v. Khuri**, 523 S.W.3d 619 (Tenn. 2017), should apply. *See generally id.* at 620 (holding that no pre-suit HIPAA authorization is required when only a single defendant is given pre-suit notice). The Court of Appeals disagreed. According to the **Wenzler** court, **Bray** established two points:

> (1) "a plaintiff need not provide a HIPAA-compliant authorization when a single healthcare provider is given pre-suit notice of a healthcare liability claim," and (2) a health care provider may use or disclose protected health information for its health care operations and does not need to obtain a medical authorization in order "to use a patient's medical records in [its] possession and consult with counsel to evaluate the merits of a potential claim."

**Wenzler**, 2018 WL 6077847, at *8 (quoting **Bray**, 523 S.W.3d at 622–23); *see also* **Bray**, 523 S.W.3d at 622 (quoting 45 C.F.R. § 164.501) ("'Health care operations' include '[c]onducting or arranging for medical review, *legal services*, and auditing functions.'"). But the **Wenzler** court concluded that the plaintiff had not provided pre-suit notice to only a single medical provider; the plaintiff had provided pre-suit notice to two health care providers, regardless of the fact that one employed the other. *Id.* (citing **Lawson v. Knoxville Dermatology Grp., P.C.**, 544 S.W.3d 704, 710 (Tenn. Ct. App. 2017) (holding that the one provider exception established in **Bray** did not apply where the plaintiff had given pre-suit notice to a physician's assistant and the dermatology practice that employed her)).

The **Wenzler** court next considered whether either of the two defendants suffered prejudice as a result of the deficient authorization. First, the court noted that the dentistry practice had conceded that the dentist held none of the plaintiff's medical records; the only records were held by the dentistry practice. *Id.* at *8. Because HIPAA permits "a health care provider to use or disclose protected health information in its possession for its own

health care operations[,]" ***Bray***, 523 S.W.3d at 622, the court concluded that "it was not necessary for [the dentistry practice] to utilize the HIPAA authorization to obtain records from any other health care provider identified as a potential defendant[.]" Instead, the dentistry practice "was authorized to use the records in its possession to evaluate the merits of Plaintiff's claim without a HIPAA authorization." ***Wenzler***, 2018 WL 6077847, at *8. Thus, the dentistry practice suffered no prejudice, and the court concluded that the plaintiff had substantially complied with section 29-26-121(a)(2)(E). ***Id.*** at *10.

The same fate did not meet the plaintiff's claim against the defendant dentist. In trial and on appeal, the plaintiff argued that because of the employer-employee relationship between the dentist and the dentistry practice, the dentist had free access to the medical records held by the dentistry practice. The ***Wenzler*** court concluded, however, that "[t]he 'health care operations' exception to the general requirement of a HIPAA compliant authorization, which was discussed in ***Bray***, does not extend to the lengths implicitly urged by [the p]laintiff." ***Id.*** In reaching this result, the ***Wenzler*** court first looked to the language of the regulations, which provide that "[a] covered entity may use or disclose protected health information for *its own* treatment, payment, or health care operations." ***Id.*** (quoting 45 C.F.R. § 164.506(c)). The regulation goes on to state that

> (4) A covered entity may disclose protected health information to *another covered entity* for health care operations activities *of the entity that receives the information*, if each entity either has or had a relationship with the individual who is the subject of the protected health information being requested, the protected health information pertains to such relationship, and the disclosure is:
> (i) For a purpose listed in paragraph (1) or (2) of the definition of health care operations; or
> (ii) For the purpose of health care fraud and abuse detection or compliance.

***Id.*** (quoting 45 C.F.R. § 164.506(c)). According to the ***Bray*** court, the purposes listed in paragraphs (1) and (2) of the definition of health care operations refer to "quality-related health care operations "and do not include legal services, which is separately addressed in paragraph (4)." ***Id.*** (footnote omitted) (citing 45 C.F.R. § 164.501). Thus, the ***Wenzler*** court held that "this exception to the authorization requirement would not permit [the dentistry practice] to disclose records to [the dentist] for the purposes of [the dentist's] health care operations (i.e., conducting or arranging for legal services)." ***Id.*** Because the authorization sent to the dentist was not HIPAA-compliant and the plaintiff did not demonstrate that the dentist had another means of accessing the dentistry practice's records, the court concluded that the dentist suffered prejudice as a result of the deficient authorization.

The situation presented in this case is nearly identical to the facts in ***Wenzler***. While in ***Wenzler***, the HIPAA authorization provided with the pre-suit notice did not name any provider, the authorizations in this case did name some individuals and entities that were

entitled to obtain records concerning Appellant. But the authorizations did not permit Dr. Mallett to obtain any records from the other health care provider that received notice, UTMG. Thus, the result of the *Wenzler* authorization and the authorizations provided in this case are the same: a health care provider was not provided an authorization to obtain and use the records of another healthcare provider who was provided notice. And neither of the two exceptions outlined in *Bray* are applicable here. *See Wenzler*, 2018 WL 6077847, at *8 (quoting *Bray*, 523 S.W.3d at 622–23) (explaining the two exceptions recognized in *Bray*, as discussed *supra*). First, Appellant sent pre-suit notice to more than a single health care provider. As such, the first exception is inapplicable. *See id.*; *Lawson*, 544 S.W.3d at 710. Second, HIPAA does not authorize UTMG to disclose to Dr. Mallett in the absence of a compliant HIPAA authorization for Dr. Mallett for any purposes other than those listed in 45 C.F.R. § 164.506(c)(i) & (ii), regardless of the fact that Dr. Mallett was an employee of UTMG at the time of the negligence at issue. *Wenzler*, 2018 WL 6077847, at *10. Because Dr. Mallett's own legal services are not included in paragraphs (i) or (ii), HIPAA simply does not permit UTMG to disclose records to Dr. Mallett for purposes of this litigation.

Thus, we must conclude that Dr. Mallett failed to receive a HIPAA-compliant medical authorization that allowed her to obtain and use the records held by UTMG. And like the plaintiff in *Wenzler*, Appellant has not shown that Dr. Mallett had another means of obtaining the records. Tennessee law provides that "[d]efendants are clearly prejudiced when unable, due to a form procedural error, to obtain medical records needed for their legal defense." *Hamilton v. Abercrombie Radiological Consultants, Inc.*, 487 S.W.3d 114, 120 (Tenn. Ct. App. 2014). Thus, we conclude that Appellant failed to substantially comply with Tennessee Code Annotated section 29-26-121(a)(2)(E) because her authorization would not allow Dr. Mallett to obtain medical records from the other health care provider receiving pre-suit notice.

Due to Appellant's failure to substantially comply with Tennessee Code Annotated section 29-26-121, Appellant did not receive the 120-day extension on the applicable statute of limitations. *See Byrge v. Parkwest Med. Ctr.*, 442 S.W.3d 245, 249–50 (Tenn. Ct. App. 2014) ("[I]n order for [p]laintiff's First Complaint to have been timely filed, Plaintiff must have complied with [section] 29-26-121 in order to receive the additional 120 day extension of the statute of limitations. . . . Because Plaintiff failed to comply with [section] 29-26-121, Plaintiff did not receive the 120 day extension, and, therefore, his first complaint was not timely filed."); *see, e.g., Dortch v. Methodist Healthcare Memphis Hosps.*, No. W2017-01121-COA-R3-CV, 2018 WL 706767, at *3 (Tenn. Ct. App. Feb. 5, 2018) ("[B]ecause Ms. Dortch did not comply with the provisions of section 121, she did not receive the 120 day extension, which made her [] Complaint time-barred"); *J.A.C.*, 542 S.W.3d at 514 ("Due to the [p]laintiff's substantial noncompliance, the trial court was correct in determining that the 120-day extension of the statute of limitations [ ] provided by . . . section 29-26-121(c) was unavailable."). Here, the first lawsuit was dismissed without prejudice on November 28, 2016. Without the benefit of the

120-day extension, Appellant's lawsuit must have been refiled by November 28, 2017. *See* Tenn. Code Ann. § 28-1-105(a) (providing a one-year saving statute to refile an action dismissed without prejudice). Appellant filed her second lawsuit on March 22, 2018, over one hundred days following the expiration of the time provided under the saving statute. As a result, Appellant's complaint was not timely filed. We affirm the trial court's dismissal of the claim against Dr. Mallett.

### UTMG

We next consider whether the trial court erred in dismissing UTMG on the basis of expiration of the statute of limitations. Although UTMG initially filed a motion to dismiss, it appears from the record that the trial court converted UTMG's motion to a motion for summary judgment because UTMG relied on parts of Appellant's deposition and other documents. It is well-settled that a motion to dismiss "must be converted to a summary judgment motion if 'matters outside the pleadings are presented to and not excluded by the court.'" *Pendleton v. Mills*, 73 S.W.3d 115, 120 (Tenn. Ct. App. 2001) (quoting *Pacific Eastern Corp. v. Gulf Life Holding Co.*, 902 S.W.2d 946, 952 (Tenn. Ct. App. 1995)); *see also* Tenn. R. Civ. P. 12.02 ("If, on a motion asserting the defense numbered (6) to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56[.]"). We therefore review the dismissal of UTMG under the summary judgment standard.

Summary judgment is appropriate where the moving party has demonstrated that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). "We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness." *Rye*, 477 S.W.3d at 250 (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). The burden is upon the moving party to establish that its motion satisfies these requirements. *See Staples v. CBL Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000). Under the summary judgment standards established in *Rye*, when the moving party does not bear the burden of proof at trial, it "the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264.

The basis of UTMG's motion was that the first complaint naming it as a party, filed on June 2, 2010, was filed outside the applicable statute of limitations. It is well-settled that actions alleging health care liability must be filed within one year after the accrual of the cause of action. *Runions v. Jackson-Madison Cty. Gen. Hosp. Dist.*, 549 S.W.3d 77, 86 (Tenn. 2018) (citing Tenn. Code Ann. § 29-26-116). In general, compliance with pre-suit

notice requirements extends this period by 120 days.[8] *See* **Runions**, 549 S.W.3d at 86 (citing Tenn. Code Ann. § 29-26-121(c)).[9] In this case, however, Appellant filed her lawsuit against UTMG on June 2, 2010, more than two years after the date of treatment that she alleges injured her. But she argues that her complaint was timely because of the application of the discovery rule.

> The discovery rule
>
> is an equitable exception that tolls the running of the statute of limitations until the plaintiff knows, or in the exercise of reasonable care and diligence, should know that an injury has been sustained. It is based on reason, logic and fundamental fairness. The purpose of the discovery rule is to prevent the inequitable result of "strict application" of the statute of limitations, which would require plaintiffs to vindicate a non-existent wrong, at a time when the injury is unknown and unknowable.

**Durham v. Est. of Losleben**, 624 S.W.3d 492, 497 (Tenn. Ct. App. 2020), *perm. app. denied* (Tenn. Apr. 8, 2021) (quoting **Smith v. Hauck**, 469 S.W.3d 564, 569–70 (Tenn. Ct. App. 2015) (citations marks omitted)) (some quotation marks omitted). As this Court has explained in the health care liability context,

> Under the discovery rule, the statute of limitations in a medical malpractice case begins to run when the patient discovers, or reasonably should have discovered (1) the occasion, the manner, and the means by which the breach of duty that caused his or her injuries occurred, and (2) the identity of the person who caused the injury. However, the plaintiff is not entitled to wait until he or she knows all of the injurious consequences caused by the alleged negligence before filing suit. Instead, the statute of limitations is tolled only during that period of time when the plaintiff has *neither actual nor*

---

[8] In the trial court, UTMG argued that the case should be dismissed because Appellant gave no pre-suit notice in the first action, nor did she timely file a certificate of good faith as required by Tennessee Code Annotated section 29-26-122. The trial court denied UTMG's motion to dismiss on these bases. UTMG has not appealed that decision. Whether the statute of limitations was extended in this case has no relevancy to this appeal because UTMG is arguing that Appellant's claim against UTMG accrued more than two years prior to the filing of the First Amended Complaint. If UTMG is correct, the claims against UTMG were untimely regardless of whether Appellant was entitled to an extension.

[9] In 2008, Tennessee Code Annotated section 29-26-121 provided only a ninety-day extension. *See* Tenn. Code Ann. § 26-26-121(c) (2008). On June 11, 2009, however, the statute was amended to provide a 120-day extension. The amendment altering the duration of the extension applied "to notice given on or after July 1, 2009[.]" 2009 Tenn. Laws Pub. Ch. 425 (H.B. 2233). Because pre-suit notice is to be sent at least sixty days before the filing of the complaint, it appears that the notice applicable to UTMG would have been sent sometime in 2010, after the 2009 amendment to section 29-26-121. Regardless, the duration of the extension has no effect on this appeal, as noted *supra* in footnote 8.

*constructive knowledge* of (1) the injury, (2) the wrongful conduct causing that injury, and (3) the identity of the party or parties who engaged in that wrongful conduct.

***Burk v. RHA/Sullivan, Inc.***, 220 S.W.3d 896, 900–01 (Tenn. Ct. App. 2006) (internal quotation marks and citations omitted). In explaining constructive notice, the Tennessee Supreme Court has opined:

> Under the current discovery rule, a cause of action accrues and the statute of limitations begins to run not only when the plaintiff has actual knowledge of a claim, but also when the plaintiff has actual knowledge of "facts sufficient to put a reasonable person on notice that he [or she] has suffered an injury as a result of wrongful conduct." ***Carvell v. Bottoms***, 900 S.W.2d 23, 29 (Tenn. 1995) (quoting ***Roe v. Jefferson***, 875 S.W.2d 653, 657 (Tenn. 1994)). This latter circumstance is variously referred to as "constructive notice" or "inquiry notice." Quoting the Iowa Supreme Court, we have explained that inquiry notice "charges a plaintiff with knowledge of those facts that a reasonable investigation would have disclosed. . . . [O]nce a plaintiff gains information sufficient to alert a reasonable person of the need to investigate 'the injury,' the limitation period begins to run." ***Sherrill v. Souder***, 325 S.W.3d at 593 n.7 (quoting ***Rathje v. Mercy Hosp.***, 745 N.W.2d 443, 461 (Iowa 2008)); *see also* ***Diamond v. Davis***, 680 A.2d 364, 372 (D.C. 1996) (defining inquiry notice as the "notice which a plaintiff would have possessed after due investigation").

***Redwing v. Cath. Bishop for Diocese of Memphis***, 363 S.W.3d 436, 459 (Tenn. 2012) (footnote omitted)

While the question of whether a plaintiff had constructive notice is often an issue of fact for the trier or fact, the question of whether a plaintiff had "*actual* knowledge of a tortious injury and of the alleged tortfeasor's identity," id., is a question of law, "appropriate for judicial determination[.]" ***Phillips v. Casey***, No. E2014-01563-COA-R9-CV, 2015 WL 4454781, at *4 (Tenn. Ct. App. July 21, 2015) (citing ***Burk***, 220 S.W.3d at 901). But constructive notice may be capable of adjudication at summary judgment when "'the undisputed facts demonstrate that no reasonable trier of fact could conclude that a plaintiff did not know, or in the exercise of reasonable care and diligence should not have known, that he or she was injured as a result of the defendant's wrongful conduct[.]'" ***Young ex rel. Young v. Kennedy***, 429 S.W.3d 536, 557 (Tenn. Ct. App. 2013) (quoting ***Schmank v. Sonic Automotive, Inc.***, No. E2007-01857-COA-R3-CV, 2008 WL 2078076, at *3 (Tenn. Ct. App. May 16, 2008)); *see also* ***Roe v. Jefferson***, 875 S.W.2d 653, 658 (Tenn. 1994) (concluding that "no reasonable trier of fact could find that [the plaintiff] was unaware that she had suffered an injury for purposes of the discovery rule," and thus defendant was entitled to summary judgment); *cf.* ***Halmon v. Lane College***, No. W2019-

- 14 -

01224-COA-R3-CV, 2020 WL 2790455, at *3 (Tenn. Ct. App. May 29, 2020) (citing ***Staples v. CBL & Assocs., Inc.***, 15 S.W.3d 83, 91–92 (Tenn. 2000)) (holding that even questions of fact may be adjudicated at summary judgment when "the evidence is evaluated in the light most favorable to the plaintiff and reasonable minds could not differ that his fault was equal to or greater than that of the defendants").

Appellant first contends that UTMG's request for dismissal on the basis of the statute of limitations is barred by the doctrine of res judicata. In general, "[t]he doctrine of res judicata or claim preclusion bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, or could have been, litigated in the former suit." ***Jackson v. Smith***, 387 S.W.3d 486, 491 (Tenn. 2012) (citing ***Creech v. Addington***, 281 S.W.3d 363, 376 (Tenn. 2009)). As such, one necessary element to establish the res judicata defense is that the prior judgment was final and on the merits. ***Id.*** (citing ***Lien v. Couch***, 993 S.W.2d 53, 56 (Tenn. Ct. App. 1998)).

But in this case, the original lawsuit was concluded based on Appellant's voluntary dismissal. *See generally* Tenn. R. Civ. P. 41.01. As a result, the finality element is not met and res judicata does not apply:

> [F]or res judicata . . . to apply, the judgment in the prior case must have been final. *See* ***Richardson v. Tennessee Bd. of Dentistry***, 913 S.W.2d 446 (Tenn. 1995). A voluntary nonsuit is not an adjudication of "all the claims and the rights and liabilities of all the parties." Tenn. R. Civ. P. 54.02. Thus, upon dismissal, any interlocutory orders are merely part of the proceedings dismissed and have no binding effect.

***Sims v. Adesa Corp.***, 294 S.W.3d 581, 586 (Tenn. Ct. App. 2008) (quoting ***Frank Rudy Heirs Assocs. v. Sholodge, Inc.***, 967 S.W.2d 810, 813 (Tenn. Ct. App. 1997)). In other words,

> The effect of a voluntary dismissal of an action is to render the proceeding a nullity. More specifically, dismissal or discontinuance of an action by the plaintiff generally operates to annul orders, rulings, or judgments previously made in the case, and leaves the parties as if the action had never been brought. Prior rulings in a voluntarily dismissed case have no preclusive effect. Thus, a voluntary dismissal without prejudice dissolves interlocutory orders made by the court in the action.

24 Am. Jur. 2d *Dismissal* § 91 (footnotes omitted). Accordingly, the question of whether the statute of limitation expired prior to the filing of the First Amended Complaint naming UTMG is not res judicata and was properly considered de novo by the trial court regardless

- 15 -

of whether any new evidence had come to light.[10]

Appellant next argues that the she did not know that UTMG was Dr. Mallett's employer until she was provided medical records in the course of the initial lawsuit on June 18, 2009.[11] According to Appellant, these records were the first indication as to who Dr. Mallett worked for. In support, Appellant cites her affidavit, in which she stated that she did not know at the time of her surgery that Dr. Mallett was employed by UTMG. Thus, Appellant asserts that a genuine dispute of material fact exists as to when Appellant discovered that UTMG was Dr. Mallett's employer.

UTMG disagrees. First UTMG notes that receipt of medical records is not always a prerequisite to actual or constructive notice in this context. For example, in *Murphy v. Lakeside Med. Ctr., Inc.*, No. E2006-01721-COA-R3-CV, 2007 WL 906760 (Tenn. Ct. App. Mar. 26, 2007), the plaintiff argued that he did not discover his cause of action until he received certain medical records from his treatment. *Id.* at *4. The Court of Appeals noted, however, that the proper inquiry was not "'when the plaintiff realized he had a cause of action but when, in the exercise of reasonable care and prudence, an ordinary person

---

[10] Appellant points out that UTMG's argument on this issue is somewhat disingenuous because it argued in its answer that certain claims were precluded by summary judgment granted in UTMG's favor in the initial lawsuit. UTMG asserted in its answer that it would file a memorandum of law setting forth additional law on this issue. UTMG did not raise this argument, however, in the two motions to dismiss that followed. As such, it appears that UTMG correctly abandoned this argument.

[11] In her brief, Appellant asserts that Dr. Mallett refused to provide Appellant with medical records and refused to inform Appellant of her employer in the original case. These allegations are not supported, however, by any citation to the record on appeal. It is not this Court's duty to comb through the appellate record looking for evidentiary support for a litigant's assertions. *See In re Est. of Storey*, No. W2017-00689-COA-R3-CV, 2018 WL 1151944, at *9 (Tenn. Ct. App. Mar. 5, 2018) (citing *Kyle v. Kyle*, No. W2004-01221-COA-R3-CV, 2005 WL 326892, at *6 (Tenn. Ct. App. Feb. 10, 2005)) ("[I]t is not incumbent upon us to comb through the record in search of support for her claims[.]"). We do note, however, that the record does contain an affidavit of Appellant's former counsel that states that he requested medical records from Dr. Mallett and Dr. Providence and received none.

But to the extent that Appellant makes these allegations in support of some argument that UTMG's involvement was fraudulently concealed from Appellant such that the statute of limitations should be tolled, this argument was not made in the trial court. Nor has Appellant specifically raised anything more than the aura of this argument with, for example, citations to relevant authorities in her appellate brief. As such, to the extent that Appellant's brief should be read as even raising this argument, it is waived. *See Sneed v. Bd. of Pro. Resp. of Supreme Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived."); *Wofford v. M.J. Edwards & Sons Funeral Home Inc.*, 490 S.W.3d 800, 809 n.7 (Tenn. Ct. App. 2015) ("Generally, arguments that are raised for the first time on appeal are waived[.]").

- 16 -

could and should have realized that a cause of action existed.'" *Id.* (quoting ***Draper v. Thorne***, No. 01-A-019008CV00305, 1991 WL 7809, at *3 (Tenn. Ct. App. Jan. 30, 1991)). And the Court held that the doctor's statements to the plaintiff and the plaintiff's diagnosis were sufficient to put the plaintiff on notice of possible negligence, well before he received the medical records.

UTMG further argues that Appellant's affidavit indicating that she was not aware of UTMG's involvement in the treatment is irrelevant if the undisputed evidence indicates that a reasonable person would have been on notice under the circumstances. *See, e.g.,* ***Lufkin v. Conner***, 338 S.W.3d 499, 505 (Tenn. Ct. App. 2010) (citing ***Kohl & Co., P.C. v. Dearborn & Ewing***, 977 S.W.2d 528, 532–33 (Tenn. 1998)) ("The standard to be applied when determining whether the knowledge requirement has been met is not a subjective one, and actual knowledge is not required. It is sufficient to show that the plaintiff reasonably should have become aware of the negligent or wrongful conduct.") (alterations and quotation marks removed); ***Burk***, 220 S.W.3d at 902 ("Plaintiffs' subjective reactions are not controlling of whether the statute of limitations should be tolled under the discovery rule."). Instead, UTMG argues that Appellant was on inquiry notice that UTMG was Dr. Mallett's employer in 2008. Specifically, UTMG relies on portions of Appellant's deposition that indicate that Appellant was receiving gynecological treatment with UTMG both before and after the surgery; that Dr. Providence, who Appellant saw at UTMG introduced Dr. Mallett to her on the day of the surgery; and that Appellant continued to see Dr. Mallett at UTMG after the surgery.[12]

UTMG also cites a number of general admission forms signed by Appellant around the time of her surgery that indicate that Dr. Mallett was not employed by The Med. Specifically, on the day of her surgery with Dr. Mallett, May 7, 2008, Appellant signed a form that contained the following:

> Who Are My Doctors And Other Health Care Providers: I understand that the doctors and some other health care providers who provide care and services to me (including residents, med students, phlebotomists, anesthesiologists, radiologists, emergency room, certain nurses, etc.) are

---

[12] Specifically, Appellant testified as follows:

> Q.     We talked a little bit earlier about your, the condition that you were in after your first surgery in May of 2008 that was conducted by Dr. Providence and Dr. Mallett. Do you recall that conversation? You indicated that after the hysterectomy and vaginal vault suspension that you had gone back to see Dr. Mallett at UTMG a number of times; is that correct?
> A.     Yes.

Appellant's deposition testimony does not include a specific date in which these appointments occurred.

NOT employees or agents of The Med. They practice their professions on behalf of themselves and/or groups or corporations unrelated to The Med, including University Physicist, Group aka U.T.M.G., or University of Tennessee Medical Group and the University of Tennessee. They are not employees or agents of The Med.

Appellant signed forms containing identical or similar language on April 29, 2008 and August 14, 2008. According to UTMG, these forms put Appellant on notice that Dr. Mallett was not employed by The Med and may have been employed by UTMG. As such, UTMG argues that Appellant was at least on notice of the need to investigate Dr. Mallet's employment by the summer of 2008. As a result, UTMG contends that Appellant's complaint, filed about two years later, is untimely.

We agree. Tennessee law generally provides that a party to a contract will be presumed to know the contents thereof:

[C]ourts in this jurisdiction in numerous cases . . . have consistently held: "[T]hat if, without being the victim of fraud [the insured] fails to read the contract or otherwise to learn its contents, he signs the same at his peril and is estopped to deny his obligation, will be conclusively presumed to know the contents of the contract, and must suffer the consequences of his own negligence."

*Giles v. Allstate Ins. Co.*, 871 S.W.2d 154, 156 (Tenn. Ct. App. 1993) (quoting *Beasley v. Metro. Life Ins. Co.*, 190 Tenn. 227, 232, 229 S.W.2d 146, 148 (Tenn. 1950)) (citing cases); *see also Moore v. Moore*, No. E2019-00503-COA-R3-CV, 2020 WL 2511234, at *9 (Tenn. Ct. App. May 15, 2020) (quoting 27 *Williston on Contracts* § 70:48 (4th ed.) ("Generally, one who assents to a writing is presumed to know its contents and cannot escape being bound by its terms merely by contending that the document was never read. The general rule is that mistakes are not excused when caused by one party's failure to read a writing.")) (emphasis omitted). Thus, we must presume that Appellant was aware of the contents of the general admissions forms she signed.

Moreover, the forms signed by Appellant in May and August 2008 put Appellant on notice that her physicians, both Dr. Mallett and Dr. Providence, were not employees of The Med, but may have been employees of UTMG. As the trial court noted, while these forms may not have conclusively established in Appellant's mind that Dr. Mallett was employed by UTMG, they were sufficient to put her on notice that she needed to further investigate Dr. Mallett's employment status. Moreover, Dr. Mallett's clear association with Dr. Providence, who Appellant saw in connection with UTMG, should have pointed Appellant in UTMG's direction with regard to her investigation. Likewise, while Appellant's testimony was not clear as to the exact dates she saw Dr. Mallett at UTMG, the fact that Appellant continued to see Dr. Mallett at UTMG "after the hysterectomy"

would have reinforced the need to investigate Dr. Mallett's employment and given Appellant a good indication of Dr. Mallett's association with UTMG in the months following May 2008.[13] Thus, Appellant had facts sufficient "to alert a reasonable person of the need to investigate" the identity of Dr. Mallett's employer after she signed the general admission forms in 2008. *Redwing*, 363 S.W.3d at 459.

The situation presented in this case is therefore analogous to *Grindstaff v. Bowman*, No. E2007-00135-COA-R3-CV, 2008 WL 2219274 (Tenn. Ct. App. May 29, 2008).[14] In *Grindstaff*, the plaintiffs sued the defendant driver after an automobile collision on January 24, 2004—342 days after the accident. *Id.* at *1. There was no activity in the case for fourteen months. Then, on May 20, 2005, the defendant driver's counsel sent a letter to plaintiffs' counsel stating that the defendant had been on the business of his employer at the time of the accident. The defendant driver filed an answer a few days later, but did not mention his employer.

On June 16, 2005, the plaintiffs requested leave to amend their complaint to add Hardee's Food Systems, Inc. ("Hardees") as an additional defendant. The amendment was allowed by agreed order. *Id.* Hardees then filed an answer acknowledging that it was the driver's employer. *Id.* Later, however, Hardees filed a motion to dismiss, arguing that the suit against it was barred by the applicable statute of limitations. *Id.* at *2. The trial court agreed and dismissed the claims against Hardees.

On appeal, the plaintiffs argued, inter alia, that the statute of limitations was tolled by operation of the discovery rule. *Id.* at *5. Specifically, the plaintiffs argued that they did not learn of the identity of the defendant until they received the letter on May 20, 2005. Taking this date as the date of discovery, they argued that their claim was timely. *Id.*

While the Court of Appeals confirmed that the discovery rule was applicable to the identity of a second defendant whose liability was vicarious in nature, it concluded that the discovery rule did not save the plaintiffs in this particular case. *Id.* at *6. Rather, the court noted that the discovery rule does not delay accrual "until a plaintiff *actually knows* the defendant's identity[,]" but only until the plaintiff either discovered or reasonably should have discovered the plaintiff's identity. And the Court emphasized that "the plaintiffs cannot simply wait for information regarding a potential defendant to come to them. They

---

[13] Importantly, even if Appellant was entitled to the maximum 120-day extension, for her First Amended Complaint to be timely, she must not have been on notice of UTMG's involvement at any time prior to February 2, 2009. It would be unreasonable to read Appellant's testimony that she went back to see Dr. Mallett at UTMG after her hysterectomy as a statement that she did not do so until nearly nine months later. *See CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 82 (Tenn. 2010) ("In conducting their review, the appellate courts must consider the evidence in the light most favorable to the non-moving party and must resolve all *reasonable* inferences in the non-moving party's favor.") (emphasis added).

[14] In its appellate brief, UTMG analyzes a multitude of caselaw that it asserts have similar facts and therefore support its position. Appellant analyzes none.

- 19 -

have a duty to investigate and discover pertinent facts 'through the exercise of reasonable care and due diligence.'" *Id.* (quoting *Calaway ex rel. Calaway v. Schucker*, 193 S.W.3d 509, 520 (Tenn. 2005)).

Applying these rules to the facts of the case, the *Grindstaff* panel concluded that the plaintiffs did not act diligently in investigating their case for twenty-eight months following the accident. While it was true that the defendant driver's employment status was not readily apparent at the time of the accident, nothing in the record indicated plaintiffs ever inquired about this issue—in fact, plaintiffs and their counsel essentially did nothing on the case until the May 2005 letter. And comparing two similar cases that came to divergent conclusions, the court concluded that summary judgment was appropriate. *Compare Huffman v. Baldwin*, No. 03A01-9508-CV-00268, 1996 WL 134949, at *1 (Tenn. Ct. App. Mar. 25, 1996) (noting that the plaintiff presented no evidence that she or any one on her behalf ever asked the defendant about the second defendant's involvement), *with Hathaway v. Middle Tennessee Anesthesiology, P.C.*, 724 S.W.2d 355, 360 (Tenn. Ct. App. 1986) (holding that the plaintiff's due diligence was jury question when the plaintiff was aware of neither the injury nor the identity of the tortfeasor during the disputed time period).

Although not identical, we conclude that *Grindstaff* supports the decision of the trial court. Here, unlike in *Grindstaff*, Appellant had information in her possession that indicated that The Med was not Dr. Mallett's employer, but that UTMG could be. This coupled with UTMG's involvement in Appellant's case before and after the injury at issue put Appellant on notice, at least, of the need to investigate Dr. Mallett's employment. And while Appellant did attempt to obtain records from Dr. Mallett, the record does not indicate that she made any further effort to discover Dr. Mallett's employer. Indeed, nothing in the record suggests that even a simple internet search would not have revealed this information. Moreover, in *Grindstaff*, the plaintiff was not even on notice that the defendant driver was on the business of his employer at the time of the accident. *Grindstaff*, 2008 WL 2219274, at *6. In this case, however, Appellant has not alleged that she was not aware until she received Appellant's medical records that Dr. Mallett was employed by another entity. In fact, not only did Appellant allege in her very first complaint that Dr. Mallett was the employee of another entity, but the general admissions forms signed by Appellant in May and August 2008 suggest that Dr. Mallett was an employee of an entity other than The Med. So, it appears that Appellant chose to sue the one entity that she knew for sure was not Dr. Mallett's employer—The Med. Under these circumstances, we must conclude that the undisputed facts mandate only a single conclusion: that Appellant was on notice in May and August 2008 that UTMG was "a possible second defendant" in this case.[15] *Grindstaff*,

---

[15] The fact that UTMG allegedly altered an informed consent form after Appellant signed it makes no difference to this analysis. The very first complaint in this case alleged that Appellant was not provided with sufficient information to give informed consent by Dr. Mallett and that Dr. Mallett's employer was vicariously liable for that failure. Although the initial complaint named the wrong entity as Dr. Mallett's employer, it therefore appears that Appellant discovered the alleged *injury* of lack of informed consent well

2008 WL 2219274, at *6. Because her initial complaint against UTMG was filed outside the applicable statute of limitations, she could not rely on the savings statute to commence her second action. *See* Tenn. Code Ann. § 28-1-105 (providing that the one-year period to refile applies "[i]f the action is commenced within the time limited by a rule or statute of limitation"); *see also **Young ex rel. Young v. Kennedy***, 429 S.W.3d 536, 556 (Tenn. Ct. App. 2013) ("Only if the initial suit was filed within the applicable statute of limitations will the Saving Statute operate to revive the claim."). Consequently, the trial court did not err in concluding that Appellants' claims against UTMG were barred by the expiration of the statute of limitations.[16]

## IV. CONCLUSION

The judgment of the Shelby County Circuit Court is affirmed, and this cause is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellant Pamela Lott, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

---

in advance of her receipt of the complete medical records. As we have explained, "[t]he later discovery of additional acts of negligence would not toll the statute of limitations once the discovery rule has initially been satisfied." ***Murphy v. Lakeside Med. Ctr., Inc.***, No. E2006-01721-COA-R3-CV, 2007 WL 906760, at *5 (Tenn. Ct. App. Mar. 26, 2007) (quoting ***Sommer v. Womick***, No. M2004-01236-COA-R3-CV, 2005 WL 1669843, at *4 (Tenn. Ct. App. July 18, 2005)). Thus, once Appellant had sufficient facts to know (1) that she had been injured by an alleged lack of informed consent by Dr. Mallett and her employer and (2) that Dr. Mallett's employer could well be UTMG, her cause of action for informed consent accrued, regardless of the fact that she uncovered additional evidence to support that claim as the first action progressed.

[16] In the trial court, other arguments were made concerning Rule 15.01 of the Tennessee Rules of Civil Procedure and Tennessee Code Annotated section 20-1-119. Appellant did not raise arguments concerning these authorities on appeal, so we will not address them.